Gerald D. PETERSON, Appellant,

v.

UNITED STATES of America, Appellee.

Louis A. DERRINGER, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 19155, 19186.

United States Court of Appeals Eighth Circuit.

Dec. 31, 1968.

Rehearings Denied En Banc Jan. 21, 1969.

Rehearings Denied Jan. 23, 1969.

Robert G. Duncan, of Pierce, Duncan, Beitling & Shute, Kansas City, Mo., for appellants, Gerald D. Peterson, pro se.

Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., for appellee.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The defendants seek to set aside judgments of conviction entered in the United States District Court, Western District of Missouri. We affirm.

The defendants were charged in a single indictment of seven counts:[1]

Count I—a conspiracy between Derringer and Peterson to sell both narcotics and depressant or stimulant drugs on January 7, 1967, and January 10, 1967, in violation of 18 U.S.C. § 371.

Count II—a sale of narcotics by Derringer on January 7th in violation of 26 U.S.C. § 4705(a) and 18 U.S.C. § 2.

Count III—a sale of depressant or stimulant drugs by Derringer on January 7th in violation of 26 U.S.C. § 4704(a) and 18 U.S.C. § 2.

Count IV—a sale of depressant or stimulant drugs by both defendants on January 10th in violation of 21 U.S.C. § 331 (q) (2) and 18 U.S.C. § 2.

Count VI—a sale of narcotics by both defendants on January 10th in violation of 26 U.S.C. § 4705(a) and 18 U.S.C. § 2.

The defendants were jointly tried on the indictment. At the close of all the evidence,[2] they moved for a judgment of acquittal or a new trial on the basis of misjoinder. They claimed that no evi-

1. The indictment originally charged three defendants. Prior to the commencement of trial, one of the defendants, Jimmy Elmer Short, plead guilty to Count III of the indictment and was granted a severance as to the other counts in which he was charged.

Also, during trial, Counts V and VII were dropped against the remaining defendants.

2. The defendant, Peterson, had previously, at the close of the government's evidence, moved for acquittal on the basis of misjoinder.

dence connected Peterson with the January 7th sales or with a conspiracy before January 10th. The court denied the motions but stated that the conspiracy count would be limited to the January 10th sale as there was no evidence connecting Peterson with the earlier sales.

Each defendant was found guilty and sentenced. Peterson received a ten year sentence on Count VI, a five year sentence on Count I, and a one year sentence on Count IV, all to run concurrently. Derringer received a five year sentence on Counts II and VI, a two year sentence on Counts I and III, and a one year sentence on Count IV, all to run concurrently.

The defendants urge that their convictions should be set aside because: (1) the court erred in refusing to grant a severance and new trials; (2) the indictment and the charge to the jury erroneously permitted a conviction on a finding that the defendants had "caused" the drugs and narcotics to be sold; (3) the sales were exempt under § 4705(c) (4); (4) the defendants were deprived of due process of law and a speedy trial because of unreasonable delay in making the arrest after the alleged violations; (5) the evidence as to Derringer on Count VI was insufficient to support the verdict of guilty; and (6) the evidence as to Counts I, II, III and IV was insufficient to justify submitting them to the jury.

## SEVERANCE

The defendants contend, and properly so, that had the conspiracy count been limited to the January 10th sale in the indictment, joinder of Counts II and III, which deal with the January 7th sale, with the other counts would have been improper and the defendants would have been entitled to separate trials.[3] Therefore, they argue that they are entitled to new and separate trials as a matter of law.

We disagree. This issue was resolved in Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960).[4] There, in a five to four decision, the Supreme Court stated:

"The allegations of the indictment having met the explicit provisions of Rule 8(b) as to joinder of defendants, we cannot find clearly erroneous the finding of the trial court and the Court of Appeals that no prejudice resulted from the joint trial. * * *

* * * * * *

" * * * Nor can we fashion a hard-and-fast formula that, when a conspiracy count fails, joinder is error as a matter of law. * * * "

Id. at 513–14, 516, 80 S.Ct. at 947.

This is the rule absent a showing of bad faith on the part of the government in bringing the indictment. United States v. Manfredi, 275 F.2d 588 (2d Cir.), cert. denied, 363 U.S. 828, 80 S.Ct. 1598, 4 L.Ed.2d 1523 (1960). No such allegation has been made here.

The Supreme Court, in rejecting the idea of retroactive misjoinder, held that if joinder is permitted by Rule 8(b), Fed.R.Crim.P., subsequent motions for

3. Under Rule 8(b) Fed.R.Crim.P., common participation in "the same act or transaction or in the same series of acts or transactions" is a requisite for joinder. If the alleged common participation had been limited to the January 10th sale, only those counts which deal with that sale would have been properly joined.

The January 7th sale would have had to be charged separately since Rule 8(a), Fed.R.Crim.P., which permits joinder of offenses of "the same or similar character," has no application where there are multiple defendants. Cupo v. United States, 123 U.S.App.D.C. 324, 359 F.2d 990, cert. denied, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1966); King v. United States, 355 F.2d 700 (1st Cir. 1966).

4. For discussion, see United States v. Branker, 395 F.2d 881 (2d Cir. 1968); United States v. O'Brien, 319 F.2d 437 (7th Cir. 1963); 8 Moore's Federal Practice—Cipes, Criminal Rules ¶ 8.06 [3] (2d Ed. 1968); The Supreme Court, 1959 Term, 74 Harv.L.Rev. 81, 158 (1961); 45 Minn.L.Rev. 1066 (1961).

severance will be controlled by Rule 14, Fed.R.Crim.P. The Court observed:

" * * * We do emphasize, however, that, in such a situation, the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear. And where, as here, the charge which originally justified joinder turns out to lack the support of sufficient evidence, a trial judge should be particularly sensitive to the possibility of such prejudice. * * * "

Id. at 516, 80 S.Ct. at 948.

The admonition to be "particularly sensitive" recognized that conspiracy trials abound with potential prejudice:

"A co-defendant in a conspiracy trial occupies an uneasy seat. There generally will be evidence of wrongdoing by somebody. It is difficult for the individual to make his case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather flocked together. * * * "

Krulewitch v. United States, 336 U.S. 440, 454, 69 S.Ct. 716, 93 L.Ed. 790 (1949). It was this fear of the creation of a "subtle bond" between the co-defendants which led the four-man minority in *Schaffer* to the conclusion that it should be made a hard-and-fast rule that a misjoinder occurs whenever the conspiracy count, upon which it is based, fails for lack of evidence. The majority, however, felt that through the proper exercise of its discretion, the trial court could protect both the defendants' interest in a fair trial and society's interest in efficient judicial administration. The abuse of this discretion being always subject to review by the appeals courts.

█ We do not believe that the District Court abused its discretion:

(1) Each of the defendants was represented by his own counsel. United States v. Schaffer, 266 F.2d 435 (2d Cir. 1959), aff'd, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed. 2d 921 (1960).

(2) Testimony as to the defendants' participation in the offenses was clear and convincing. It established that two separate sales had taken place and that Peterson had only participated in one of them. There was very little opportunity for the jury to be confused. The principal government witness was an undercover agent who testified that he had participated in both transactions. The defendants took the stand on their own behalf and testified that they had not been involved in either sale. Thus, the only real question was whether the jury would believe the testimony of the undercover agent or the defendants.

(3) Only two defendants were involved. Thus, the danger that the jury would fail to consider personal guilt was minimal. The limited number of defendants distinguishes this case from Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), relied upon by the defendants. There, thirty-two defendants were listed in the indictment and nineteen were brought to trial. Although one conspiracy was charged, the testimony indicated that, in fact, there were eight separate conspiracies. The Supreme Court held that the dangers of jury confusion and of guilt by association under those circumstances were so great that the conviction had to be set aside.

(4) The trial court, in its charge to the jury, made a conscious effort to separate the testimony as to each count. It indicated which of the defendants was charged on each count and stated what had to be proved to establish guilt on each one. No objection was made to the instructions.

█ The defendants now contend that the instructions were defective in that they failed to state that Derringer's alleged statements and acts prior to January 10th could not be considered as evidence against Peterson. The trial court agreed to give the instruction, but neglected to do so. The defendants give no reason for failing to bring the court's attention to the omission. Their failure to do so obviates the necessity of our considering this contention (Rule 30, Fed.R.

Crim.P.) unless we apply the plain error rule (Rule 52(b), Fed.R.Crim.P.).

While the defendants have failed to demonstrate why we should apply the plain error rule, its application would not change our view on the ultimate disposition of this case.

The charge, when read as a whole, made it clear to the jury that two separate sales were alleged and that the evidence as to each sale was to be considered as relating only to that sale. We can say with fair assurance, after reading the entire charge and considering all the evidence, that the verdict was not swayed by the failure to give the requested instruction.

▆ The defendants would also distinguish *Schaffer* on the ground that, in *Schaffer,* the defendants insisted on an acquittal and, here, they were willing to accept a new trial. We do not believe that the distinction dictates a contrary result. The rationale of *Schaffer* makes it clear that the determining factor in refusing or granting severance is not the type of relief sought by the defendants but rather the prejudice resulting from the joinder. Had the Supreme Court, in *Schaffer,* found prejudice, it could have ordered a new trial even though the motion below was for an acquittal. 28 U.S.C. § 2106.[5]

## THE VALIDITY OF THE INDICTMENT AND THE COURT'S CHARGE

The defendants' second contention is that both the indictment and the court's charge to the jury were fatally defective because they authorized a conviction upon proof that the defendants "caused" the narcotics to be sold when, under § 4705(a),[6] the actual act of selling is declared illegal and not the causing of the same.

▆▆ This appeal is the first time the defendants have sought to challenge either the indictment or the court's charge on this ground. We need not pass on the merits of the defendants' assertion because they have waived any error as to both by failing to raise them below.[7] We find no reason to grant relief from the waiver and, in any event,

5. "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances. June 25, 1948, c. 646, 62 Stat. 963." 28 U.S.C. § 2106.

6. "(a) *General requirement.*—It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate." 26 U.S.C. § 4705(a).

7. Rule 12(b) (2), Fed.R.Crim.P., requires:
"(b) *The Motion Raising Defenses and Objections.*
\* \* \* \* \*
"(2) *Defenses and Objections Which Must Be Raised.* Defenses and objections based on defects \* \* \* in the indictment \* \* \* other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. \* \* \* Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. \* \* \*"

Rule 30, Fed.R.Crim.P., requires:
"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

the defendants' contention is without merit. See, United States v. Koptik, 300 F.2d 19 (7th Cir.), cert. denied, 370 U.S. 957, 82 S.Ct. 1609, 8 L.Ed.2d 823 (1962); Pereira v. United States, 202 F.2d 830 (5th Cir. 1953), aff'd, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed 435 (1954).

## EXEMPTION UNDER § 4705(c) (4)

The defendants' third contention is that the sale of narcotics fell within the exception of § 4705(c) (4) since Hughs, the undercover agent, was technically employed by the Public Health Service. That section provides:

"(c) *Other exceptions.*—Nothing contained in this section, section 4735, or section 4774 shall apply—

\*　　\*　　\*　　\*　　\*

"(4) *Government and State officials.* —To the sale, barter, exchange, or giving away of narcotic drugs to any officer of the United States Government or of any State, Territorial, district, county, or municipal or insular government lawfully engaged in making purchases thereof for the various departments of the Army and Navy, the Public Health Service, and for Government, State, Territorial, district, county, or municipal or insular hospitals or prisons."

26 U.S.C. § 4705(c) (4).

██ This exception does not apply to the sale which took place on January 10th. The obvious purpose of the exception is to allow legitimate transfers to government officials. At the time of purchase, Hughs was not acting as an officer lawfully purchasing narcotics for the Army, Navy, Public Health Service, or for a government, state, territorial, district, county, municipal, or insular hospital or prison. As far as Peterson and Derringer knew, they were making the sale to a dealer in illicit drugs. Compare, United States v. Lauchli, 371 F.2d 303, 309 (7th Cir. 1966).

## UNREASONABLE DELAY

██ The defendants' fourth contention is that the delay between the alleged sale of the narcotics and their arrests (Derringer—June 10, 1967, Peterson—June 22, 1967) violated their right to a speedy trial and deprived them of due process in that it prejudiced them in preparing their defense. As the contention is raised for the first time on this appeal, it will not be considered. Gourneau v. United States, 390 F.2d 320 (8th Cir. 1968); Moore v. United States, 376 F.2d 32 (8th Cir. 1967); Pegram v. United States, 361 F.2d 820 (8th Cir. 1966).

The rationale for the rule requiring the issue to be raised at trial is expressed in Chapman v. United States, 376 F.2d 705, 707 (2d Cir.), cert. denied, 389 U.S. 881, 88 S.Ct. 119, 19 L.Ed.2d 174 (1967):

"The rationale for this rule is clear. If undue delay has occurred in the arrest of a defendant, he is obviously aware of this at the time of his trial. Indeed, in practice, indictments, informations or complaints set forth the date of the alleged offense, and the defendant, of course, knows when he was arrested. If the pre-arrest delay has prejudiced the accused in his defense, this fact too will be evident to him by the time the trial commences. Therefore, he is in the most favorable position by that time to appraise the injury resulting to him from the delay, and it is then that he should make known to the Court his claim of prejudice. This requirement, moreover, serves to place the government in a better position to counter the claim of prejudice by being afforded the opportunity at a voir dire examination promptly to show the absence thereof, or to explain the reasons for the delay, something it may be foreclosed from doing later. As we have stated, 'If proper objections had been made at trial, the government might well have been able to offer evidence to the contrary.' \* \* \*"

## THE SUFFICIENCY OF THE EVIDENCE ON COUNT VI AS TO DERRINGER

██ Defendant Derringer contends that his conviction on Count VI must be

set aside because, as a matter of law, the evidence is insufficient to support the verdict of guilty against him. In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to supporting the jury verdict; and all inference that tends to support the action of the jury must be accepted as established. Cross v. United States, 392 F.2d 360 (8th Cir. 1968).

Since the government's evidence as to Count VI comes chiefly from the testimony of Agent Hughs, we will treat the story related therein as established. Hughs said that on January 10th, 1967, Derringer got in touch with him about the possibility of making a buy. Derringer indicated that a man named "Gerald Peterson" had a bottle of barbiturates for sale. Hughs told Derringer that he would like to see the drugs and that Derringer should make the necessary arrangements. The arrangements were made and Derringer accompanied Hughs to meet Peterson. At this meeting, Peterson offered to sell Hughs four bottles of drugs, three of which had partial narcotics stamps on them. When Hughs noticed this, he indicated that he was not in the market for narcotics and was only interested in the barbiturates. Peterson said that it was not worth his while just to sell the barbiturates and that it was all or nothing. Derringer then told Hughs that he could make more money out of the narcotics than he could from the barbiturates. A price of $300 was then agreed upon. Derringer then told Peterson that if he got ahold of more drugs, he should contact Derringer who would get in touch with Hughs. As Hughs and Derringer were leaving the parking lot, Derringer took possession of the four bottles so he could get rid of "the stuff" if they were stopped. Upon reaching their destination, Derringer gave the four bottles to Hughs and asked Hughs for $50.00, which was given to him.

Derringer contends that even if the above is treated as established, it is not sufficient to support a conviction for selling narcotics because it shows only that Derringer intended to aid in the sale of the barbiturates, not the narcotics. We cannot agree.

Derringer was charged with being an aider or abettor in the January 10th sale, and it would be improper of us to hold that the jury was credulous in so finding. In order to find that a person aided and abetted another in the commission of a crime, it is necessary that he associate himself with the unlawful venture, that he participate in it with desire of accomplishment and that he seek by his action to make it succeed. Moore v. United States, 356 F.2d 39 (5th Cir. 1966); United States v. Peoni, 100 F.2d 401 (2d Cir. 1938). Derringer's actions with regard to the sale on January 10th were sufficient for the jury to find that he had so acted. It was Derringer who initiated the meeting at which the narcotics were sold. While at the outset only barbiturates were to be sold, it would not have been unreasonable for the jury to believe that Derringer knew there was a strong possibility that narcotics would also be involved in the sale; for at the prior sale, on January 7th, narcotics were sold under similar circumstances.

Even if this were not true, Derringer never attemped to disassociate himself from the sale once he found out that narcotics were involved. On the contrary, he encouraged the sale by his statement to Hughs that he could make more from the narcotics than from the barbiturates.

Once the sale was completed, Derringer accepted $50.00 for making the arrangements.

### THE SUFFICIENCY OF THE EVIDENCE ON COUNTS I, II, III, IV

The sentence of both defendants on Count VI was concurrent with and at least as long as the sentences each defendant received on the other counts. It is thus unnecessary for us to consider whether the court erred in submitting to the jury the question of the

defendants' guilt on the charge of conspiracy to sell narcotics on January 10th (Count I). It is likewise unnecessary for us to consider whether the evidence was sufficient to sustain Derringer's conviction on Counts II, III and IV.

Affirmed.