**UNITED STATES of America,**
**Appellee,**

v.

**Charles Freeman KYE, Appellant.**

**No. 19432.**

United States Court of Appeals
Eighth Circuit.

May 20, 1969.

Bill B. Wiggins, Fort Smith, Ark., for appellant; Sam Sexton, Jr., Fort Smith, Ark., on brief.

James A. Gutensohn, Asst. U. S. Atty., Fort Smith, Ark., for appellee; Charles M. Conway, U. S. Atty., was with him on the brief.

Before BLACKMUN, GIBSON and BRIGHT, Circuit Judges.

BLACKMUN, Circuit Judge.

Charles Freeman Kye, age 27 and an honorably discharged veteran, and his father, James Edward Kye, age 49, were charged on a four count indictment with violations in August 1967 of 18 U.S.C. §§ 371 and 2 (conspiracy, and aiding and abetting); of 18 U.S.C. § 1708 (unlawful possession of mail matter); of 18 U.S.C. § 495 (forgery); and, again, of 18 U.S.C. § 495 (false utterance), with respect to a specifically described United States Treasury check.

Charles Freeman Kye, with retained counsel, entered a plea of not guilty to each count. The father, James Edward Kye, at first pleaded the same way but later changed his pleas to guilty and was convicted and sentenced.

At his ensuing jury trial, with appointed counsel, Charles Freeman Kye was acquitted on the forgery count but convicted on the three other counts of the indictment. Judge Williams imposed concurrent 2 year sentences on each of the conviction counts, with eligibility for parole pursuant to 18 U.S.C. § 4208(a) (2). These were the defendant's first felony convictions. He appeals in forma pauperis.

■ The objective facts are clear and uncomplicated and, except for the defendant's alibi and suggestion of mistaken identity, are not in issue. We must, as

always, read the record in the light favorable to the government as the prevailing party in the trial court and with the government's having the benefit of inferences reasonably to be drawn from the facts proved. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Harding v. United States, 337 F.2d 254, 256 (8 Cir. 1964); Kercher v. United States, 409 F.2d 814 (8 Cir. 1969).

The United States Treasury check in question was one for $275.40, dated August 1, 1967, and issued from Chicago, Illinois, to Roy S. Godfrey or Mrs. Bitha J. Godfrey of Fort Smith, Arkansas, in payment of semi-annual interest on Series H United States Savings Bonds. Mr. Godfrey, age 93 at the time of the trial, did not find the expected check in his mail. He had given no authority to anyone to receive the check or to endorse it. He was not acquainted with the defendant. Mrs. Godfrey had been dead for 3 years.

The elder Kye had possession of the check on August 2. He appeared with it early that afternoon at the Kroger Value Village in Fort Smith. He first made inquiry at the layaway counter for merchandise in the name of Kye and then in the name of Godfrey and indicated that he wished to make a payment on a layaway. Nothing under either name was found. He then went to the check cashing booth and presented the check. At that time it already carried endorsements in the Godfrey names. Kye was asked for identification. He said that he had none with him but that he had some in his car. He went out and returned with another man who he said was his son. Three witnesses identified this second man as the defendant, Charles Freeman Kye. Two of those witnesses further testified that the son said, "This is my father and that is his check" or other words of that precise import. Cashing of the check was still deferred. An employee left the scene to telephone Mr. Godfrey. He was able to reach Godfrey and was told that Godfrey had not authorized anyone to cash a check for him. Meanwhile, one of the two men indicated to the cashier that they wanted to buy groceries and would be back to get the money for the check. They left the check at the booth and did not return. The elder Kye, but not the son, gave some appearance of having been drinking.

No fingerprints were found on the check. Handwriting analysis did not connect the elder Kye with the endorsements on the check and presented no "satisfactory basis for identifying" the son as the author of either of the endorsements.

Such is the prosecution's case.

The defendant, his wife and his father were the witnesses for the defense. The senior Kye testified that the son never had the check in his possession; that he effected no writing upon it; that the son was not with him at Krogers on the day in question; that he obtained the check from "another boy" in a Fort Smith bar on August 2 about "the middle of the day"; that the boy had said "that he would buy another bottle" if Kye would get the check cashed for him; that he did not know the boy's name; that he and his son at that time were in the business of selling magazines from door to door; and that he was then living with his son. The defendant's wife testified that her husband was at home with her and their children on August 2 from midmorning until 3 p. m. The defendant testified that he was not at the Kroger store on August 2, that he never saw the check at any time before the trial, and that he never had anything to do with that check. The defense, in its examination of witnesses, intimated that the man who accompanied the elder Kye that afternoon was a convict named Flurry who resembled the defendant in size, weight, and coloring and who was in the penitentiary.

The only issue raised on the appeal is the sufficiency of the evidence and error in refusing to direct a verdict of acquittal on all counts. We find no merit in this argument.

It is elementary, of course, that it is not for us as an appellate court to make the necessary choice between con-

flicting testimony. With the senior Kye's pleas of guilty, with his presence and involvement, conceded from the witness stand, in the check cashing attempt at the Kroger store, and with the defendant firmly identified by three witnesses as the second man at the counter, the jury could appropriately conclude that it was the defendant and not a third person named Flurry who was present and who made the statement that the older man was his father and that the check was the father's. All this, including the statement of identity and of ownership, was, of course, direct and not circumstantial evidence.

█ When this direct testimony is then considered in connection wth the defendant's conviction counts relating to conspiracy or aiding and abetting, to his unlawful and knowing possession, and to his false utterance, we necessarily enter the area of the circumstantial. But, as the Supreme Court has said, "Circumstantial evidence * * * is intrinsically no different from testimonial evidence." If, under proper instructions, a jury is convinced beyond a reasonable doubt, no more is required. This is "the better rule" than one, which sometimes finds expression in lower federal court decisions, to the effect that where the government's evidence is circumstantial "it must be such as to exclude every reasonable hypothesis other than that of guilt." Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Our cases of Sykes v. United States, 312 F.2d 232, 235 (8 Cir. 1963), cert. denied, 373 U.S. 942, 83 S.Ct. 1551, 10 L.Ed.2d 698, and Tri-Angle Club, Inc. v. United States, 265 F.2d 829, 833 (8 Cir. 1959), and our pre-*Holland* comments in Salinger v. United States, 23 F.2d 48, 52 (8 Cir. 1927), cited to us by the defense, are to be read in the light of the language of *Holland.* Wood v. United States, 361 F.2d 802, 806 (8 Cir.1966), cert. denied, 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439; Gregory v. United States, 365 F.2d 203, 205 (8 Cir. 1966), cert. denied, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676.

██ Once the jury believed—as on this record it had the right to believe and as it obviously did believe—that it was the younger Kye and not Flurry who accompanied the father to the Kroger counter that August afternoon and that it was the son who said that the older man was his father and that the Treasury check in question was the father's check, the inferences flowing circumstantially therefrom are entirely permissible and justified, namely, that the two were jointly engaged in the effort to have the check cashed, in its knowingly unlawful possession, and in its knowingly false utterance, or that the son was aiding and abetting the father in that effort, in that possession and in that utterance. These are common-sense inferences. The facts that the two men were living together, that they were engaged in common employment, and that they abandoned a sizable check are added factors. Thus the evidence is obviously and substantially supportive of the conviction of the defendant on each and all of the three conviction counts, although we might observe in passing that, in view of the concurrency of the sentences, if any one count is so supported, the conviction is to be affirmed. Lawn v. United States, 355 U.S. 339, 359, 362, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Taylor v. United States, 390 F.2d 278, 282 (8 Cir. 1968), cert. denied, 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137; Raftis v. United States, 364 F.2d 948, 956 (8 Cir. 1966).

The defense argument that there was no proof (a) that the defendant had the check in his personal possession in the Kroger store, or (b) that he stated that the father was Roy Godfrey, or (c) that the defendant stole the check, or (d) that he presented the check for payment, and that this absence of proof compels the conclusion that the prosecution's case established nothing more than mere suspicion of guilt does not withstand analysis. Decided cases, including our own, are precedent to the contrary. Whiteside v. United States, 346 F.2d 500, 504 (8 Cir. 1965), cert. denied, 384 U.S. 1023, 86 S.Ct. 1946, 16 L.Ed.2d 1025; Whitehorn

v. United States, 380 F.2d 909, 912 (8 Cir. 1967); United States v. Hines, 256 F.2d 561, 564 (2 Cir. 1958).

It is tragic that a young man with responsibility for a growing family finds himself in this predicament. The convictions, however, on this record are fully justified.

Affirmed.