**Gerald D. PETERSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19369.**

United States Court of Appeals
Eighth Circuit.

June 11, 1969.

Rehearing Denied July 8, 1969.

Robert G. Duncan, of Pierce & Duncan, Kansas City, Mo., for appellant.

Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, and MATTHES and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

Gerald D. Peterson was found guilty as charged by an indictment of entering the Sturgeon State Bank, Sturgeon, Mo., on or about October 1, 1967, with intent to commit a felony in the bank, that is, larceny of money and property, in violation of 18 U.S.C. § 2113(a). From the ensuing judgment of conviction entered on June 21, 1968, the appellant has appealed.[1]

Appellant was represented in the district court by a retained lawyer experienced in the trial of criminal cases. After denial of post-trial motions, appellant's application for permission to appeal in forma pauperis was granted by the district court and appellant's trial lawyer was appointed and has represented him in this appeal.

Notwithstanding counsel's demonstrated ability in the trial, in the preparation of brief on appeal and oral argu-

1. The district court, acting pursuant to 18 U.S.C. § 4208(b), committed appellant for the maximum period of 20 years. After the study contemplated by § 4208 (c) had been completed, the district court, on October 4, 1968, modified the judgment and sentence of June 21, so that the final sentence imposed pursuant to 18 U.S.C. § 4208(a) was 15 years.

ment, appellant has also filed a pro se brief in this court in which he presents contentions not raised by his attorney in the trial or here.

We first consider the assertions of error relied upon by appellant's counsel: (1) the evidence was insufficient as a matter of law to warrant submission of the case to the jury; (2) the court erred in allowing the admission of testimony and exhibits which were "fruits of the poisonous tree" in that such evidence emanated from a search which the district court earlier had invalidated on motion to suppress; (3) the Government failed to reveal evidence favorable to the appellant.

We review the pertinent evidence in sufficient detail to demonstrate that it was sufficient to present issues of fact for the jury's determination. Significantly, the case was tried on the uncontradicted testimony of Government witnesses, stipulations and documentary evidence. The appellant, offering no evidence, unsuccessfully attempted through cross-examination to cast doubt on the veracity of some of the Government's key witnesses.

The State Bank of Sturgeon is in the relatively small town of Sturgeon, Mo. (Population approximately 1,000). The deposits of the bank were federally insured. The bank was unlawfully entered on Saturday or Sunday night, September 30 or October 1, 1967. The entry was not detected Saturday night by the deputy sheriff who patrolled the area, but he did make the discovery at about 1:00 a. m. on Monday, October 2. The doors to two vaults had been "peeled" or pried open, and $1,406.09 in coins and currency belonging to the bank had been purloined. Additionally, 79 safety deposit boxes kept in one of the vaults had been opened, and money and other property valued at $4,100 were taken from the boxes. Among the stolen coins

were 40 quarters, each of which bore the letters "D.F.C." on the tail side.[2]

These identification letters had been placed on the quarters with invisible ink by a representative of the F.B.I. The letters would become visible under an ulra-violet light. This practice of placing identification insignia on coins had been adopted by the F.B.I. as part of its efforts to combat the large number of bank robberies and burglaries occurring throughout the nation. After marking the 40 quarters they were wrapped and the bank tellers of the Sturgeon State Bank were given definite instructions never to use the marked quarters in the regular course of banking. However, in the event of a holdup an effort should be made to give the marked quarters to the robber. These instructions were complied with. The teller in charge of the marked quarters testified they were in her metal tray which was placed in the vault at approximately the time she left the bank at the closing hour on Saturday, September 30. These quarters, along with other coins and currency, were taken in the burglary.

We turn now to the evidence which incriminated the appellant.

According to a written stipulation signed by the appellant and his lawyer, Missouri automobile license No. PT1272 was issued on August 11, 1967, for a 1967 Plymouth two-door hardtop automobile. The title to the automobile was in the name of Geneva L. Bishop, 3241 McGee Street, Kansas City, Mo. Geneva L. Bishop is the mother of Delores Ann Lane, who is the common-law wife of appellant.

The undisputed evidence shows that appellant and two male companions were seen in the above described automobile in Sturgeon near the bank, first at approximately 9:00 p. m. Saturday night, September 30, and the second time a short while thereafter. An occupant of another automobile, who had a verbal

2. The letter "D" signifies the Kansas City division of the Federal Bureau of Investigation; the letter "F" signifies the Jefferson City resident agency of the F.B.I.; the letter "C" was assigned to the Sturgeon State Bank. This combination of letters did not appear on any other quarters anywhere in this country.

altercation with the appellant around 9:00 p. m. over a minor incident, recorded the number of the license plate, which conformed to the one issued to Mrs. Bishop. This party identified appellant during the trial as the driver of the Plymouth automobile at the time and place stated above.

On the afternoon of October 2, 1967, the day the burglary was discovered, a lady teller of the Jackson County State Bank, Kansas City, Mo., sold bank money order No. 29115 in the amount of $7.44 and money order No. 29117 for $125.[3] Both money orders were sold to a man who paid for them with ten rolls of quarters and 17 rolls of nickels. The purchaser also had a "wad" of currency and wanted to exchange the currency for bills of larger denominations. The teller could not accommodate him because she did not have the larger denominations available. The lady who handled the money order transactions was not able to positively identify the appellant during the trial as the man who purchased the money orders but stated that he "looked familiar."

In connection with the sale of the money orders the teller inserted the date of issuance and the amount of each, but the names of the payees and the names and addresses of the remitters were left blank. In the stipulation referred to above appellant admitted that "City of Kansas City" and "Harold E. Thornton," the names of the payees in money orders 29115 and 29117, respectively, and "A. S. Nickerson, 4259 E. 60 Terr." and "D. A. Lane, 4259 E. 60 Terr.", names and addresses of remitters appearing in 29115 and 29117, respectively, were in the handwriting of the appellant. Nickerson was the owner of the property at 4259 E. 60 Terrace which had been leased to D. A. Lane, appellant's common-law wife. Appellant and D. A. Lane resided at those premises. Harold E. Thornton was Nickerson's rent collecting agent.

On October 4, 1967, two F.B.I. agents, acting upon information received from Thornton on October 3, in accordance with a prearranged understanding, went to the Jackson County State Bank in Kansas City. After conversing with the cashier and the teller who had sold the money orders, they obtained the bank's two copies of the money orders and also all but one of the quarters used in part payment for the money orders. Upon exposing the quarters to the rays of an ultra-violet light, the letters "D.F.C." on the tail side of the quarters stolen from the bank were plainly revealed. The agents knew from the information received from Thornton that the $125 money order was in payment of one month's rent on the premises occupied by appellant. They also learned on October 4 that the $7.44 money order was in payment of water used on the same premises. The foregoing constitutes the relevant facts.

■ We are of the firm view that contrary to appellant's assertion his conviction did not result from "the piling of inference upon an inference." We have here an unbroken chain of telling circumstances, which tended to prove essential facts relating to the offense, from which the jury was duly warranted in inferring that appellant was the guilty party.

■ It is firmly settled that a conviction may rest upon circumstantial evidence. In Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), the Court considered a challenge to the instructions relating to circumstantial evidence. In affirming the conviction, Mr. Justice Clark, in speaking for a unanimous Court, held:

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt

---

3. This teller testified that in the preparation of the money order for $125 she made a mistake which necessitated voiding money order No. 29116.

against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." *Id.* at 140, 75 S.Ct. at 137.

This and other courts have sustained convictions which rested upon circumstantial evidence. Doss v. United States, 355 F.2d 663, 667 (8th Cir. 1966); Sadler v. United States, 303 F.2d 664, 665 (10th Cir. 1962). See also United States v. Kye, 411 F.2d 120 (8th Cir. May 29, 1969); Wood v. United States, 361 F.2d 802 (8th Cir. 1966). For a clear exposition of the rule see DeVore v. United States, 368 F.2d 396, 399 (9th Cir. 1966), where the court stated in part:

"It is no objection that the evidence was circumstantial, and only tended to prove the fact of possession, rather than demonstrating it. * * * 'The acceptability of the inference drawn turns on whether it has been founded upon "fact" regardless of whether such fact has been arrived at by direct or circumstantial evidence.' (citation omitted) 'The rule is not that an inference, no matter how reasonable, is to be rejected if it, in turn, depends upon another reasonable inference; rather the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt.' "

■ We have no difficulty in concluding that this case falls within the doctrine announced in the above authorities. The evidence, including reasonable inferences to be drawn therefrom, viewed in the light most favorable to the verdict, was beyond doubt substantial and sufficient to warrant the jury's finding. Because of the strong incriminating circumstances we are not surprised that the jury, under appropriate instructions not challenged in the trial or here, returned its verdict in less than ten minutes.

Neither do we find any substance in the contention that appellant's conviction was "prejudicially tainted" by use of evidence obtained in an unlawful search. In this connection, the record discloses that the Farm & Home Savings & Loan Association of St. Joseph, Mo., was burglarized on January 7, 1967. On October 5, 1967, appellant was arrested in his home at the address stated above for burglary of the St. Joseph savings association. As an incident to the arrest a sweeping search of the premises was made by several law enforcement officers. The search was attacked by a motion to suppress. The district court, after a full hearing, granted the motion and suppressed the evidence obtained. None of the items seized in the search was offered in evidence in the prosecution of this case. Appellant nevertheless contends that certain documents taken in the search, particularly his copies of the two money orders above discussed, provided the F.B.I. agents with knowledge that appellant had purchased the two money orders and that without such knowledge the officers would not have been in a position to obtain the incriminating evidence flowing from the sale of the money orders.

■ It is axiomatic that evidence, tangible or intangible, directly or indirectly gained as a result of an illegal search is tainted fruit of the poisonous tree and is inadmissible. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L. Ed.2d 441 (1963). "But the 'fruit of the poisonous tree' doctrine excludes evidence obtained from or as a consequence of lawless official acts, not evidence obtained from an 'independent source.' " Costello v. United States, 365 U.S. 265, 280, 81 S.Ct. 534, 542, 5 L.Ed.2d 551 (1961), citing Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). Auippa v. United States, 393 F.2d 597, 600 (10th Cir. 1968). See Standard Oil Co. v. State of Iowa, 408 F.2d 1171 (8th Cir. April, 1969), aff'g State of Iowa v. Union Asphalt & Roadoils, Inc., D.C., 281 F. Supp. 391, 404–411 (1968).

As the Supreme Court stated in *Wong Sun, supra,* 371 U.S. at 488, 83 S.Ct. at 417: "[T]he more apt question * * * is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'", quoting from Maguire, Evidence of Guilt, 221 (1959).

█ Here, the existence of the evidence objected to by appellant was discovered prior to and independent of the illegal search and seizure. As indicated on October 3, Thornton, the rent collector, notified Agent Fink that he had received a personal money order for rent payment from appellant. On October 4, Agent Fink visited the collector's office and was shown the money order. On the same day Fink, accompanied by another F.B.I. agent, went to the Jackson County Bank where the money order was purchased and there was shown the bank's retained copy of the money order used to pay the rent and also of the second money order purchased by appellant, and used to pay appellant's water bill. All of this occurred before the illegal search on October 5. Later, after the money orders cleared banking channels, Agent Fink picked up the original canceled money orders and went to the Kansas City Water Collection Division to verify payment by appellant.

It is abundantly clear that the Government gained the information questioned by the appellant, previous to discovery of the bill from the water department and the customer's copy of the two personal money orders seized in the unlawful search on October 5. That information was not made inadmissible by the subsequent illegal acts of the Government's agents.

█ Finally, appellant's counsel contends that the Government failed to reveal evidence favorable to the defense. Appellant was afforded full opportunity to engage in pretrial discovery proceed-

ings within the purview of Rule 16, Fed. R.Crim.P. Indeed, the record indicates that the appellant's counsel was aware prior to trial of most, if not all, of the Government's convicting evidence. No effort was made, however, to obtain the information in question before or during the trial although it is readily apparent that diligence would have revealed the facts in question. In a post-trial motion appellant's counsel for the first time asserted that the Government was aware that other "strange vehicles" and "men" were seen in the vicinity of the bank before and after appellant was last seen in Sturgeon. Other bits of evidence were also enumerated in the motion.

Judge Oliver conducted a plenary post-conviction hearing to determine whether the Government had in fact concealed evidence, the use of which may have aided the defense. The Judge carefully considered each item to which his attention had been directed in a written report filed by appellant's counsel. After due consideration the court ruled in effect that no material evidence had been suppressed. We have independently examined the record and reach the same conclusion. This is not a Brady v. Maryland situation.[4] *Brady* holds "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196.

By no stretch of the imagination can it be said that the evidence allegedly not revealed was "material" and would have aided the defense.

Appellant asserts in his pro se brief: (1) he was deprived of a speedy trial in violation of the Sixth Amendment; (2) he was deprived of his constitutional right to be present at all stages of his trial, and that Rule 43 Fed.R.Crim.P. was violated because he was not present at a hearing in the Judge's chambers. Neither of the foregoing points of error

---

4. 373 U.S. 83, 83 S.Ct. 1194, 19 L.Ed.2d 215 (1963).

was raised before or during the trial or in the post-conviction motions.

■ In the absence of a showing that the points presented affected the substantial rights of appellant so as to constitute plain error, Rules 52 Fed.R.Crim. P., we would be fully justified in refusing to consider appellant's belated claims. Peterson v. United States, 405 F.2d 102, 108–109 (8th Cir. 1968); McNeeley v. United States, 353 F.2d 913, 917 (8th Cir. 1965); Edwards v. United States, 333 F.2d 588, 589 (8th Cir. 1964). We have nonetheless examined the merits of the complaints in order to lay both issues at rest.

■ The speedy trial question is patently frivolous. The offense was committed on September 30 or October 1, 1967. The indictment was returned on October 9, 1967. Appellant was arraigned on October 16, filed a motion to suppress on October 19 and on March 8, 1968, a hearing was held on the motion to suppress the evidence. The trial commenced on April 8 and concluded on April 9.

The record further discloses that preceding the March 8 hearing appellant was or had been a defendant in two other criminal cases in the United States District Court for the Western District of Missouri. The trial of one was commenced on June 9, 1967, sentence was imposed on January 12, 1968. On appeal the conviction was affirmed. See Peterson v. United States, *supra*. The trial of another case in which appellant was a defendant was concluded on January 15, 1968, with a verdict of not guilty. The record also discloses that appellant was unable to furnish bond pending appeal in Peterson v. United States, *supra*.

Due consideration of all of the circumstances compels the conclusion that the delay between the filing of the indictment and the trial in this case was not unreasonable. See Hodges v. United States, 408 F.2d 543 (8th Cir. 1969).

Appellant's second point is also lacking in merit.

■ It is fundamental, of course, that where there is any reasonable possibility of prejudice from defendant's absence at any stage of the proceedings, a conviction cannot stand. Estes v. United States, 335 F.2d 609, 618 (5th Cir. 1964), cert. denied, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965); Jones v. United States, 299 F.2d 661 (10th Cir.), cert. denied, 371 U.S. 864, 83 S.Ct. 123, 9 L.Ed.2d 101 (1962); United States v. White, 237 F.Supp 644 (D.C.Va.1964), aff'd, 342 F.2d 379 (4th Cir.), cert. denied, 382 U.S. 871, 86 S.Ct. 148, 15 L.Ed.2d 109 (1965).

■ Additionally, Rule 43 provides in pertinent part:

"The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules."

However, it has been held that this rule should be considered together with Rule 52(a) which provides that harmless error shall be disregarded. Estes v. United States, *supra*, 335 F.2d at 618. It is also settled that "[t]he presence of a defendant must bear a reasonably substantial relationship to the opportunity to defend. The Constitution does not assure 'the privilege of presence when presence would be useless, or the benefit but a shadow.' Snyder v. Com. of Massachusetts, 291 U.S. 97, 106 [54 S.Ct. 330, 78 L.Ed. 674] (1934) . . . ." Stein v. Massachusetts, 313 F.2d 518, 522 (9th Cir. 1962).

■ Thus, if no prejudice to a defendant's substantial rights resulted from his absence at a stage of the proceedings, the courts will not overturn his conviction. Rule 52(a), Fed.R.Crim. P.; Estes v. United States, *supra;* Taylor v. United States, 385 F.2d 835, 836 (8th Cir. 1967), cert. denied, 393 U.S. 879, 89 S.Ct. 181, 21 L.Ed.2d 153 (1968); Cox v. United States, 309 F.2d 614, 616–618 (8th Cir. 1962); Glouser v. United States, 296 F.2d 853, 855–856 (8th Cir.

1961), cert. denied, 369 U.S. 825, 82 S.Ct. 840, 7 L.Ed.2d 789 (1962).

The record discloses that immediately before the trial commenced Judge Oliver requested the attorneys to confer with him in chambers. No objection was made by appellant's counsel to the absence of appellant. The proceedings were recorded and have been carefully examined. It is clear that the conference was designed entirely to arrange for an orderly trial. Judge Oliver first confirmed that counsel for the Government and appellant had received a copy of the court's order granting appellant's motion to suppress. Suggestions were invited and received with respect to voir dire examination of the jury panel. The court and counsel then agreed on appropriate procedures for handling 18 U.S.C. § 3500 statements. The stipulation regarding appellant's handwriting on the money orders was discussed. During the course of the conference the court made it abundantly clear that unless there was agreement on all matters discussed he would conduct a hearing outside the presence of the jury and in the presence of the defendant. No objections were offered.

Additionally, Judge Oliver informed appellant's counsel that he would conduct a hearing at any stage of the trial if any reason appeared to question the admissibility of the money orders or any other exhibits. The propriety of an instruction relating to the failure of the appellant to testify was discussed. Appellant's counsel opposed the giving of such an instruction and it was not included in the charge to the jury.

We have scrutinized the conference and find no reasonable basis for concluding that appellant's substantial rights were prejudiced because he was not present during the course of the conference. This court, in *Cox, supra,* in dealing with a similar situation, made this pertinent observation:

"It is not unusual for a judge to call counsel into chambers and discuss matters of evidence, the form of questions, instructions proposed, and other matters looking to a more orderly trial, without having a defendant present. Appellant's help was not needed by the judge in order to make a ruling. His presence could hinder an orderly discussion. This conference was not a part of the trial within the meaning of Rule 43."

By way of conclusion we are convinced from careful analysis of the record that the trial was free of prejudicial infirmities. Appellant's conviction was responsive to substantial evidence and consequently the judgment is affirmed.