**UNITED STATES of America,**
**Appellee,**

v.

**Glenn Beverly REED, Appellant.**
**No. 20456.**

United States Court of Appeals,
Eighth Circuit.

Aug. 20, 1971.
Rehearing and Rehearing En Banc
Denied Sept. 21, 1971.

James R. McManus, Des Moines, Iowa, for appellant.

John B. Grier, Asst. U. S. Atty., Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for appellee.

Before MATTHES, Chief Judge, and VAN OOSTERHOUT, Circuit Judge, and EISELE, District Judge.

## VAN OOSTERHOUT, Circuit Judge.

This is a timely appeal by defendant Glenn Beverly Reed from his conviction by a jury on an indictment charging Reed, his wife Marjorie Reed, and John and Wesley McClish with aggravated robbery of the Decatur County State Bank at Leon, Iowa, a federally insured bank, on April 9, 1970, and with forcing a bank officer to accompany John Mc-Clish, in violation of 18 U.S.C.A. §§ 2113 (e) and 2. Defendant Reed was sentenced to forty years imprisonment.

John and Wesley McClish each entered a plea of guilty to a lesser offense and had not been sentenced at the time of defendant's trial. Mrs. Reed was subsequently tried and convicted.

Defendant concedes that the Decatur State Bank at Leon, Iowa, is a federally insured bank; that such bank was robbed of $48,000 on the night of April 9, 1970, by John and Wesley McClish. The robbery was accomplished by the Mc-Clishes going to the home of Vice President Kilgore and compelling him at gun point to go to the bank with John Mc-Clish, open the safe and deliver the money while Mrs. Kilgore and her son were bound to chairs and held hostage by Wesley McClish. There is no evidence that defendant was in Leon or at the Kilgore home or the bank at the time of the robbery. The Government's case against Reed is based upon circumstantial evidence connecting him with the robbery as an aider and abettor. The supporting evidence will be hereinafter discussed.

Defendant bases his right to reversal upon the following points:

I. The trial court erred in overruling defendant's motion for acquittal made at the close of the Government's case and renewed at the close of all the evidence based upon the ground that the Government had failed to prove beyond a reasonable doubt that the defendant either acted as a principal or aided and abetted John and Wesley McClish in the robbery of the Decatur State Bank on April 9, 1970.

II. The United States Attorney was guilty of prejudicial misconduct in repeatedly warning defendant's witness John McClish of his constitutional right not to incriminate himself and the possibility in event he testified of indicting him for other offenses, which could have the effect of threatening or intimidating the witness, thereby denying defendant due process and a fair trial.

III. The court erred in admitting hearsay testimony and exhibits which were in no way connected with the defendant, thereby depriving defendant of a fair trial.

We hold the trial court committed no prejudicial error and affirm the conviction for the reasons hereinafter stated.

## I.

In determining the sufficiency of the evidence to support defendant's conviction, the evidence must of course be viewed in the light most favorable to sustaining the jury verdict of guilty. The Government as the prevailing party is entitled to the benefit of all reasonable inferences that tend to support the verdict. Peterson v. United States, 8 Cir., 411 F.2d 1074, 1078. Defendant concedes such standards are to be applied upon review.

There is no direct evidence to connect defendant with the robbery or to establish that he was in Leon at the time of the robbery. There is, however, substantial evidence to support a finding that defendant Reed aided and abetted the McClish brothers in the commission of the robbery. Defendant in his brief states:

"It will be conceded that where it appears that a person has aided or abetted others in the commission of a crime, they are responsible for the commission of the felony as if they committed it directly, but there must be some proof that the person accused did in fact aid or assist the others in the commission of the crime charged. Nye & Nissen v. United States, 336 U.S. 613, 69 Supr.Ct. 766 [93 L.Ed. 919] (1949)."

Such is a proper statement of the applicable law. The standard to be applied is thus stated in Nye & Nissen v. United States, p. 619 of 336 U.S., p. 770, of 69 S.Ct.:

"In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he partici-pate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' L. Hand, J., in United States v. Peoni, 2 Cir., 100 F.2d 401, 402."

We will not attempt to set out the evidence in detail but will point to some of the material facts which we believe adequately make a submissible case on aiding and abetting.

John McClish, age eighteen, had worked for the defendant and had lived at his home off and on for several years. Reed was a customer of the robbed bank and knew its layout and officers. John and Wesley McClish were in the Reed home on the Monday before the robbery. On that day John told Wesley in the absence of defendant that the proceeds of the robbery would be divided as follows: "That Mr. Reed and a guy named Richard—he mentioned the last name at that time—was supposed to get half and me and him was supposed to get the other half."

John and Wesley McClish drove to Leon that night with the intent of robbing the bank but because of uncertainty as to where Kilgore lived and other circumstances did not attempt the robbery on that occasion. On the afternoon of April 9, 1970, defendant Reed and his wife in their car drove John McClish to the home of his brother Wesley at Shenandoah, Iowa, where the disguise clothing, defendant's sawed off shotgun used in the robbery, and the attache case used for holding some of the money, and other paraphernalia were transferred to Wesley McClish's car. John and Wesley McClish later that day drove to Leon and robbed the bank in the manner hereinabove indicated.

The Reeds, although they announced they were going to drive to Omaha, drove to Decatur and had dinner with Mrs. Reed's grandmother and stayed there until about 11:30 p.m. Decatur is located on Highway 2 about six miles from Leon. The grandmother's home is located near Highway 2. The robbery occurred about 10:30 p. m. After the

robbery, Wesley drove John to Decatur. John got out of the car at Decatur at a point near grandmother Reed's home and took with him the attache case and bags containing the stolen money and the shotgun used in the robbery, and placed them just in front of the back seat of the Reed car covering them with Mrs. Reed's coat. John then went to Highway 2 and stood on the shoulder of the road. Shortly thereafter the Reeds left the grandmother's home. They saw John standing on the shoulder and picked him up.

As the Reed car was proceeding on Interstate 35 on the way to Des Moines, they were stopped by the sheriff and a highway patrolman. The officers had received word of the robbery and were looking for suspects. The Reeds established their identity. The officers inquired as to what was in the trunk. Reed opened the trunk. Nothing unusual was found there. The officers from the side of the car observed the attache case on the floor adjoining the back seat which was partially covered by Mrs. Reed's coat. They expressed the view that this was the same attache case which contained the money and was produced at the trial. They inquired as to the contents of the case. Mrs. Reed responded that it contained her daughter's roller skating equipment. The officers had no warrant and no probable cause for search or arrest then existed and no search was made of the interior of the car.

John McClish advised the officers that he had no identification papers and that he was a hitchhiker. He first gave the officers a wrong name but later gave his correct name and stated that he was on his way to his parents' home at Patterson, Iowa. The Reeds did not make any effort to identify John McClish or act that they knew him. McClish was held by the officers for identification and was subsequently taken to his parents' home at Patterson by a patrolman. Reed advised the officers that he was in a hurry to get home for business reasons. The officers told Reed that he could go on his way, and he did so.

The following morning the money, the shotgun and other paraphernalia were found at the side of Interstate 35 a short distance north of the place where the Reed car had been stopped by the officers.

After John McClish was returned to Patterson, he phoned the Reed home asking to be picked up and driven there. Reed refused to authorize the use of his car for that purpose. Arrangements were made for Dorene Ervin, Mrs. Reed's sister, to go to Patterson with her car to pick up John McClish. Defendant Reed gave her $20 for gas money. She delivered John at the Reeds about 4 a. m.

John McClish testified that after he got back to the Reed home he looked for the money and found it was gone. He asked Reed about the money and Reed said he threw it out. Reed told McClish not to go after the money because he was in enough trouble the way it was.

There is of course testimony favorable to the defendant. Both McClishes testified defendant had nothing at all to do with the planning or execution of the robbery. Credibility resolutions are for the fact finder, here the jury.

The evidence, if believed by the jury as it obviously was, is sufficient to establish beyond a reasonable doubt that the defendant Reed associated himself with the McClish brothers in the robbery; and that he participated in it as something he desired to bring about and that he sought by his action to make it a success. Innocent people do not ordinarily throw out money found in their car or fail to report such discovery to the authorities. Defendant did not testify. No explanation is made of the reason for disposing of the money. It was also reasonable for the jury to conclude that John McClish knew that defendant would be in Decatur with his car to pick him up with the stolen money and that such meeting place had been arranged.

Defendant argues that under United States v. Jones, 8 Cir., 418 F.2d 818, where the Government's evidence in a criminal case is wholly circumstantial,

the proof must be such as to exclude every reasonable hypothesis except accused's guilt for a conviction to stand. It is quite true that the two-to-one majority opinion in *Jones* holds as contended.

This court has on a number of occasions squarely held that Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150, rejects the test previously used by this and other courts in cases where the evidence is wholly circumstantial that a conviction can be sustained only if the evidence is such as to exclude every reasonable hypothesis except that of guilt. United States v. Jones, 8 Cir., 418 F.2d 818, 828, Blackmun dissenting; United States v. Kye, 8 Cir., 411 F.2d 120, 122; United States v. Francisco, 8 Cir., 410 F.2d 1283, 1286; United States v. Lodwick, 8 Cir., 410 F.2d 1202, 1204; and cases cited in the foregoing cases. See also Easter v. United States, 8 Cir., 441 F.2d 425.

The proper test appears to be that if there is substantial evidence sufficient to convince the jury beyond a reasonable doubt that all essential elements of the offense have been established, the motion for acquittal should be denied. Holland v. United States, supra; Peterson v. United States, 8 Cir., 411 F.2d 1074, 1077–1078; United States v. Lodwick, supra.

In light of the apparent conflict existing between members of this court on the propriety of the exclusion of every reasonable hypothesis other than that of guilt test, an en banc hearing may ultimately be necessary to resolve the differences. Such course, however, does not appear to be necessary to decide this case as we are convinced the evidence here fully surmounts the exclusion of every reasonable hypothesis other than that of guilt test. We are also completely convinced that there is substantial evidence to warrant the jury finding defendant guilty beyond a reasonable doubt. The motion for acquittal was properly overruled.

## II.

█ John McClish was called as a witness by the defendant. He had entered a plea of guilty to a lesser offense but had not been sentenced. He had been advised by his attorney to invoke his Fifth Amendment privilege against self-incrimination. A hearing was held outside the presence of the jury. The trial judge advised John McClish of his constitutional rights including his Fifth Amendment right against self-incrimination. McClish's attorney was present in court. Counsel were invited by the court to express their view. The United States Attorney then made a lengthy statement to the effect that if John McClish took the stand, he would be extensively and thoroughly cross-examined and that the United States Attorney would go into every possible thing, including his possession of a sawed off shotgun, and that the examination would lead to an indictment on the illegal possession of the shotgun. The right to advise defendant of his constitutional rights is not questioned. The defendant contends that the United States Attorney went too far, and that the effect of his remarks was to discourage the witness from testifying and to threaten and intimidate the witness.

█ We are of the view that the United States Attorney was somewhat too enthusiastic and pursued this matter further than was necessary or desirable. However, no objection was made to the remarks. No motion to strike or motion for a mistrial was made. Defendant frankly concedes that any relief on this point must be based on the plain error rule, Rule 52, Fed.R.Crim.P. We have recently held that the plain error rule is to be sparingly applied and is to be invoked only to prevent a plain miscarriage of justice. United States v. Cable, 8 Cir., 446 F.2d 107 (July 12, 1971); United States v. Wenner, 8 Cir., 417 F.2d 979, 981.

Defendant concedes in his brief that he cannot point out the precise harm he suffered as a result of the alleged mis-

conduct of the prosecutor. John McClish testified on behalf of defendant. He absolved the defendant from any participation in the crime charged. We find nothing in the record to indicate that John McClish was coerced or intimidated by the prosecutor's remarks. Defendant has failed to establish that he was in any way prejudiced by the prosecutor's remarks.

### III.

█ Defendant's final contention is that the court erred when it allowed hearsay testimony in the form of verbal statements and physical evidence to be received in spite of appropriate objections by counsel. Some of the testimony objected to was received before the proper foundation connecting defendant to the transaction was established. It was within the discretion of the trial court to admit the testimony subject to its being connected up by subsequent proof. Fabian v. United States, 8 Cir., 358 F.2d 187, 192; Reistroffer v. United States, 8 Cir., 258 F.2d 379, 386, 388.

█ The court in ruling upon the objections stated that the evidence would be received subject to its being connected up. At several points during the trial immediately following the objection the court explained to the jury that statements made or acts done by one person may not be considered as evidence against another who was not present when the statement was made, but that such rule does not apply when it appears beyond a reasonable doubt from other evidence in the case that a concert of action to accomplish an unlawful act exists between the defendant and one or more persons. The court fully explained concert of action and advised the jury the evidence could not be considered unless they found beyond a reasonable doubt that concert of action with defendant as a participant was established, and the court in other respects explained the pertinent applicable law. Additionally, appropriate instructions on this subject matter were given to the jury in the final instructions. No exceptions were taken to the instructions.

At the close of the evidence, defendant made a motion to strike certain exhibits and testimony related thereto upon the ground that such evidence is not connected to the defendant. The court ruled:

> "The Court is satisfied that there is sufficient competent evidence independent from these exhibits and the testimony in connection therewith, to establish, and from which the jury might find that there was a common plan and concert of action here to rob the Decatur State Bank at Leon, of which the defendant Glenn Beverly Reed was one of the members."

Such finding is supported by substantial evidence, and the finding supports the admissibility of the challenged evidence.

We do not disagree with defendant's contention that the statements of a co-conspirator to be admissible must occur during the existence of the conspiracy and must be in furtherance of its objectives. A factual basis for so finding here exists.

We have examined the record and conclude that defendant has failed to establish the court committed prejudicial error. Defendant has had a fair trial.

The judgment of conviction is affirmed.