626 F.2d 940

**UNITED STATES of America**

v.

**David T. LEWIS, Appellant.**

**No. 79–1275.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 7, 1979.

Decided March 3, 1980.

---

11. *See note 5 supra.*

William J. Garber, Washington, D. C., Court appointed counsel, for appellant.

Paul L. Knight, Asst. U. S. Atty., Washington, D. C., with whom Carl S. Rauh, U. S. Atty., John A. Terry and Lillian A. McEwen, Asst. U. S. Attys., Washington, D. C. were on the brief for appellee.

Before MacKINNON and WILKEY, Circuit Judges and GORDON *, United States Senior District Judge for the Western District of Kentucky.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

In a four count indictment, Lewis was charged with multiple violations of the Controlled Substances Act, (84 Stat. 1242), 21 U.S.C. § 801 et seq. The First and Second Counts each alleged unlawful *distribution* of 2 tablets of phenmetrazine,[1] in violation of 21 U.S.C. § 841(a),[2] on March 28, 1978 and May 4, 1978 respectively. The Third and Fourth Counts were both alleged to have been committed on July 24, 1978, and both involved the same 3 tablets of phenmetrazine. The Third Count charged unlawful *possession with intent to distribute* in violation of Section 841(a), and the Fourth

---

* Sitting by designation pursuant to 28 U.S.C. § 294(c).

1. Also known as preludin or, in the street vernacular, "bam".

2. 21 U.S.C. § 841(a) provides:
 Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
 (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

Count charged simple possession in violation of D.C. Code § 33–702.[3]

Metropolitan police officer Scott testified at trial that, while working in an undercover capacity, he purchased two pills from appellant on each of the two occasions charged in the First and Second Counts (Tr. 7, 14–15, 28–30, 38–42). Counts Three and Four resulted from the circumstances surrounding the execution of a warrant for appellant's arrest by Officer Dodd, who testified that at the time of Lewis' arrest three pills were found six inches from appellant on the park bench on which he was seated. The arrest warrant had been issued on the basis of the two earlier sales to undercover officer Scott. (Tr. 67–70).

The jury returned a guilty verdict on all four counts and Lewis was sentenced to imprisonment for a period of "three (3) years on each of counts # 1, # 2 and # 3 of the indictment . . . plus a special parole term of four (4) years." Count Four, which had charged simple possession of phenmetrazine in violation of D.C. Code § 33–702, was dismissed because it constituted an offense included within the Third Count. Since the jury returned a guilty verdict on the Third Count it was proper for the District Court at the time of sentencing to dismiss the verdict on the Fourth Count. Congress did not intend to authorize dual convictions or separate sentences for two offenses, where one offense includes all the basic elements of the other offense. *United States v. Moore*, 175 U.S.App.D.C. 103, 533 F.2d 1238 (D.C.Cir.1976) (Possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a) and simple unlawful

possession of a dangerous drug in violation of D.C. Code § 33–702); *cf. United States v. Dorsey*, 192 U.S.App.D.C. 313, 340, 591 F.2d 922, 939 (1978) (18 U.S.C. § 924(c)(2) and D.C. Code § 22–3204, firearms offenses); *United States v. Shepard*, 169 U.S.App.D.C. 353, 365, 515 F.2d 1324, 1336 (D.C.Cir.1975) (Federal bank robbery, 18 U.S.C. § 2113(a) and armed robbery under D.C. Code §§ 22–2901, 3202); *United States v. Knight*, 166 U.S.App.D.C. 21, 509 F.2d 354 (D.C.Cir. 1974) (Federal mail robbery, 18 U.S.C. § 2114 and armed robbery under D.C. Code § 22–2901, 3202).

On appeal, appellant alleges error in three rulings by the district court, to wit: that the court should have (1) granted his motion to sever Counts One and Two from Counts Three and Four; (2) refused admission into evidence of Lewis' prior conviction of heroin distribution; and (3) granted his motions for acquittal based upon alleged insufficient evidence to prove his guilt of Counts Three and Four.[4]

We discuss appellant's contentions *seriatim*, and affirm the rulings and judgment of the district court.

## I. THE MOTION TO SEVER

Lewis first attacks the denial of his motion to sever the Third and Fourth Counts which charged the July 24th offenses (the date of his arrest), from the first two counts, which charged actual distribution in March and May. We hold that the joint trial of the four counts and their joinder in the same indictment was permissible under F.R.Crim.P. 8.[5] The First and

---

3. District of Columbia Code § 33–702 provides:
 (a) Except as otherwise provided by sections 33–703 and 33–704, the following acts, the failure to act as hereinafter set forth, and the causing of any such act or failure are hereby declared unlawful: . . . (4) The possession of a dangerous drug by any person, unless such person obtained such drug on the prescription of a practitioner or in accordance with subparagraph (D) of paragraph (1) of this subsection.
 § (D)(1) refers to drugs dispensed by a medical practitioner in the course of his practice.

4. Since the conviction on Count 4 was vacated we do not discuss this point as to such count.

However, most of the argument is subsumed in our discussion of the Third Count.

5. Rule 8 of the Federal Rules of Criminal Procedure provides:
 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Second Counts, charging distribution, implicitly include possession and intent to distribute the drugs as essential elements of each offense. The Third and Fourth Counts also involve charges of possession and the Third Count alleges an intent to distribute. Likewise, in all four counts it was the same dangerous drug that formed the basis for the charge—phenmetrazine in pill form. Therefore, the four offenses each contain a sufficient number of the same basic elements so that it may be concluded that they "are of the same or similar character." F.R.Crim.P. 8.

■ The appellant avers, however, that the judge erred in failing to invoke the protections against prejudice embodied in Federal Rule of Criminal Procedure 14, which provides that:

> [i]f it appears that a defendant . . . is prejudiced by a joinder of offenses . . . for trial together . . . the court may order an election or separate trials of counts . . . or provide whatever other relief justice requires.

In the case of *Drew v. United States,* 118 U.S.App.D.C. 11, 14, 331 F.2d 85, 88 (D.C. Cir.1964), this court identified certain types of prejudice that would justify granting separate trials. These included (1) that the defendant might become embarrassed or confounded in presenting separate defenses; (2) that the jury might use evidence of one of the crimes charged to infer a criminal disposition to commit the other crime or crimes charged; and (3) that the jury might cumulate evidence of the various crimes charged to find guilt on a count, which if considered separately, it would not so find. Appellant contends that he was prejudiced in the manners elaborated in *Drew* by the trial judge's failure to grant his motion for severance.

On the basis of the government's presentation of the evidence at trial we reject appellant's claim of prejudice. The government called for the testimony of only two police officers. Officer Scott testified that he purchased phenmetrazine from Lewis on the two occasions charged in Counts One and Two of the indictment. Officer Dodd testified that when he arrested appellant, the three pills of phenmetrazine that resulted in Counts Three and Four were only six inches away from appellant's person. Furthermore, the dates of the offenses charged in Counts One and Two (the actual distribution counts) were separated by two and one half months from the dates of Counts Three and Four (charging possession and intent to distribute and simple possession). Thus, evidence tending to prove the defendant's guilt of the First and Second Counts was clearly "separable and distinct" from that of the Third and Fourth Counts. *Dunaway v. United States,* 92 U.S.App.D.C. 299, 303, 205 F.2d 23, 27 (D.C.Cir.1953). We therefore do not perceive any likelihood that the jury would confuse or cumulate the evidence against the defendant, draw improper inferences of criminal disposition, or confuse the applicability of the government's evidence or the defendant's defenses. *Cf. Blunt v. United States,* 131 U.S.App.D.C. 306, 404 F.2d 1283 (D.C.Cir.1968), *cert. denied,* 394 U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d 221 (1969); *Drew v. United States, supra.*

■ Finally, the discretion of the trial court in considering severance is broad, and reversal is required only upon a finding of clear prejudice and abuse of discretion. *United States v. Kim,* 193 U.S.App.D.C. 370, 385, 595 F.2d 755, 770 (D.C.Cir.1979); *United States v. McClintic,* 570 F.2d 685, 689 (8th Cir. 1978); *cf. United States v. Maynard,* 155 U.S.App.D.C. 223, 331, 476 F.2d 1170, 1178 (1973). No such prejudice or abuse of discretion was shown here so we uphold the district court's denial of defendant's severance motion.

## II. THE ADMISSION OF IMPEACHMENT EVIDENCE

Appellant next questions the admissibility for impeachment purposes of his prior felony conviction for distributing heroin. Before Lewis testified on his behalf, defense counsel requested the court to rule on whether, if his client took the witness stand in January, 1979, the Government could impeach him with a 1972 felony conviction for distributing heroin in violation of 21

U.S.C. § 841(a). (Tr. 118, *et seq.*) This required a ruling under Rule 609 of the Federal Rules of Evidence, which provides:

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement regardless of the punishment.

### (1) Crimes Involving Dishonesty or False Statement.

■ The Government contended at trial that Lewis' prior conviction was admissible under both Rule 609(a)(1) and (a)(2). The trial judge first rejected, as we do here reject, the Government's contention that the crime of heroin distribution involves dishonesty or false statement.[6] It was argued that he who lives by surreptitiously selling drugs on the street to innocent members of the community engages in a crime involving "dishonesty". The argument is ingenious, but it does not comport with the plain meaning of dishonesty, and we have rejected the same contention previously. *United States v. Millings*, 175 U.S.App.D.C. 293, 295, 535 F.2d 121, 123 (D.C.Cir.1976). While *Millings* involved a conviction for simple possession of a narcotic drug, we do not discern that a conviction for distributing heroin is any more indicative of dishonesty or false statement.

■ Contrary to the Government's construction, we do not perceive that it is the *manner* in which the offense is committed that determines its admissibility. Rather we interpret Rule 609(a)(2) to require that the crime "involved dishonesty or false statement" as an *element* of the statutory offense. While narcotics may be sold in a manner that is "deceitful", which is one synonym for "dishonest",[7] the statutory elements of offenses under the Controlled Substance Act[8] do not require that the drug be sold or possessed in a manner that involves deceit, fraud or breach of trust. If a narcotics pusher misrepresents the strength or quality of his heroin, as frequently happens, he may be defrauding his purchaser, but the *statutory crime* concerns itself only with the sale, not the fraud. Therefore, Lewis' prior felony conviction, involving as it did only "unlawful distribution of a controlled substance", did not involve "dishonesty or false statement" within the meaning of Rule 609(a)(2).

### (2) Felony Convictions and Balancing Probative Value and Prejudicial Effect.

The Government also contended that the conviction was admissible under Rule 609(a)(1), since heroin distribution is a "crime . . . punishable by . . . imprisonment in excess of one year under the law under which [Lewis] was convicted, and the court determine[d] that the probative value of admitting this evidence outweigh[ed] its prejudicial effect to the defendant . . . ." Since the conviction was for a felony punishable by imprisonment in excess of one year the only remaining issue is whether the trial court abused its discretion in determining that the probative value of that evidence did outweigh the prejudicial effect upon the defendant's case.

---

**6.** The Prosecutor argued to the trial Judge:

"I would say that a person who is pushing drugs is engaging in conduct which involves dishonesty and that is very different from the mere possession of a drug.

When we possess a drug there is some possibility it may be for our personal use. When pushing a drug, selling a drug means you are out on the street and inflicting yourself on innocent members of the community.

In that respect it is certainly not a victimless crime and certainly does involve dishonesty on a daily basis."
(Tr. 121).

**7.** Webster's Third New International Dictionary (unabridged) 650 (1961).

**8.** And formerly under the narcotics laws.

When the question was first presented to the court, the lawyers argued their positions and the trial judge made an initial observation:

I guess he would be prejudiced, the jury might say he was convicted once, he probably did it again, that is how he would be prejudiced.

(Tr. 122) In subsequent argument defense counsel stated that Lewis would be the "only witness in this case and quite frankly he is going to deny these transactions and testify to the effect that it wasn't him and if there was such transaction it would have to be with somebody else." (Tr. 122) It thus became clear that the jury would be required to determine the issue of credibility between Lewis and the government witnesses.

Following further argument by both sides the Court ruled that the evidence was admissible under Rule 609(a)(1).

THE COURT: Well, I am going to let it in. . . . I don't agree with the prosecution this offense involves dishonesty or false statement, but I do believe that under 609(a), unlike 609(b),[9] there is a strong presumption of letting in prior convictions of felonies, they should be admitted if the Court determines the probative value outweighs the prejudicial effect.

In the absence of a decision from the U.S. Court of Appeals I am prepared to determine that the probative value outweighs the prejudicial effect with the instruction being given. (Tr. 123).

In making its ruling to admit the felony conviction the court observed that the Government had a strong case, that the police officer who testified that he had bought preludin from the defendant on two separate occasions impressed him as being a credible witness, and on a third occasion, according to the second officer's testimony, the defendant was caught with preludin at his side only six inches away. Under those circumstances the court ruled that the prior conviction was proper impeachment and that it would be admitted for that purpose

only. When the ruling was communicated to the defendant, he decided that irrespective of the court's ruling he would testify as a witness and tell his side of the story. (Tr. 125).

Lewis then took the stand and denied having sold drugs as charged in the First and Second Counts. He also initially implied that his brother, who looked like him, might have been the one who sold the drugs to the officer, but almost immediately thereafter he asserted that his brother did not sell drugs. Lewis also professed ignorance of street drug transactions and claimed to be a candy salesman. (Tr. 136–141).

He admitted that he saw people pass money around in the neighborhood but did not assume that drug selling was going on because as he lamely testified: "I didn't think nothing, I didn't pay it no mind." (Tr. 147). Lewis tried to convince the jury that he was a relative stranger to the use and sale of illegal drugs:

Q What were they passing money for then?

A I don't know.

(Tr. 148). He denied ever having seen pills like the phenmetrazine he allegedly sold to the officer. (Tr. 150). "I never seen a pill like this before." He claimed that his only knowledge of the use of phenmetrazine was that his sister used it for weight reduction. (Tr. 151–152). He denied ever seeing the washcloth that was covering the 3 pills of phenmetrazine on the park bench only six inches from his side. (Tr. 140, 67–93).

After these denials he was impeached on cross-examination by his admission that he had been "convicted in the United States District Court on April 7, 1972 for *distributing* drugs in violation of the Controlled Substance Act." (Emphasis added) (Tr. 154). Immediately following Lewis' testimony admitting his prior conviction (Tr. 154–155), the jury was instructed that the prior conviction was admissible only for the purpose of evaluating the credibility to be given to his testimony. At the conclusion

---

**9.** *See* n. 15, *infra.*

of defendant's testimony the judge remarked to counsel that defendant's denials had made his credibility an even more vital consideration in the trial and created added support for the court's earlier ruling that the probative value of the prior conviction outweighed its prejudicial effect.[10] The court also repeated the limiting instruction in its final charge to the jury. (Tr. 175–176).

Notwithstanding the trial judge's explicit balancing of the probative value of the prior conviction against its possible prejudicial effect, appellant maintains that the trial judge applied the wrong standard in so balancing and hence committed reversible error. In particular, appellant points to the court's comment that "under 609(a), unlike 609(b), there is a strong *presumption* of letting in prior convictions of felonies, they should be admitted if the Court determines the probative value outweighs the prejudicial effect." (Tr. 123). (Emphasis added) Appellant contends that this comment indicates that the court admitted evidence of his prior conviction on the basis of a *presumption* of admissibility, rather than placing the burden of proof upon the Government to establish admissibility, a standard that we found to be dictated by the new Federal Rules of Evidence in *United States v. Smith*, 179 U.S.App.D.C. 162, 173–174, 551 F.2d 348, 359–360 (D.C.Cir.1976).

To analyze the strength of appellant's argument, we review our decision in *United States v. Smith, supra.* The trial judge in *Smith* was apparently unaware that the new Federal Rules of Evidence had become effective by the time of trial, for he never mentioned Rule 609 in determining the ad-missibility of defendant's prior conviction. Indeed, on appeal, a panel of this court felt that he had decided the issue of admissibility by reference to earlier law in the circuit that preceded the new Federal Rules of Evidence.

The trial judge's determination of admissibility in *Smith* was rendered even more important by the defendant's resultant decision not to take the stand. 179 U.S.App. D.C. at 170–1, 551 F.2d at 356–7. In these circumstances, we decided that the judge's failure to apply the new Federal Rules of Evidence was not assuredly harmless error, since not only might use of the new rules have produced a different ruling on the question of admissibility, but also in that event, there was a strong probability that the defendant would have taken the stand to deny his participation in the robbery. We therefore conditioned our affirmance of the conviction, making it subject to a new determination on remand of the question of admissibility of the prior conviction in accordance with the new Rule. We instructed the trial judge to order a new trial if he found the prior conviction inadmissible after application of Rule 609(a). 179 U.S. App.D.C. at 171, 551 F.2d at 357.[11]

■ Upon comparison of the instant facts to those in *Smith*, we do not have the same cause for concern that necessitated the remand in that case. The trial judge in *Smith* was oblivious to the new standard promulgated by the federal rules and applied instead the previous standard based upon this court's decision in *Luck v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 783 (D.C.Cir.1965). In this case Judge Greene in the district court, however, was fully

10. THE COURT: His [Lewis'] testimony here indicated he never heard of any narcotics, he goes around the world thinking people exchange money in the courthouse and everywhere for other things and I think in that respect clearly to rebut his credibility on that point the value outweighs the prejudice . . ."
(Tr. 157).
With respect to the 1972 conviction it is also significant that Lewis had entered a *guilty plea* to the distribution of heroin as charged therein.

11. On remand a new trial was ordered for co-defendant Gartrell; he was tried a second time by a jury that returned a verdict of guilty of bank robbery while armed, and armed robbery; he was duly sentenced thereon to concurrent sentences and the judgment was affirmed on appeal. (District Court Docket Entries, Cr. 75–105).
Appellant Smith did not contest his conviction on grounds of improper admission of impeachment evidence; hence, his conviction was affirmed without need for remand to the district court.

cognizant of the distinction between the old and new rules, as he illustrated when defendant's counsel argued that a case was controlling and Judge Greene asked, "[w]as it under this rule or was it under *Luck?*" (Tr. 119).

 More importantly, Judge Greene explicitly considered the nature of the prior conviction sought to be introduced [12] and evaluated its possible prejudicial effect,[13] and only then reached the reasoned conclusion that the probative value of admitting the felony conviction outweighed its preju-

dicial effect.[14] This was a correct utilization of the decisional mechanics involved in determining whether a prior felony conviction is admissible under Rule 609(a)(1).[15]

 We also consider that appellant's objection to the use of the term "presumption" in a statement made by the judge when he ruled the prior conviction to be admissible misconceives the thought the judge was expressing. In so ruling the court stated that he "[b]elieve[d] that under 609(a), unlike 609(b),[16] there is a strong *presumption* of letting in felonies, *they*

12. In *United States v. Crawford*, 198 U.S.App. D.C. 312, 613 F.2d 1045 (1979), we held that "some inquiry into the nature and circumstances of a prior conviction is a prerequisite to its admissibility under Rule 609(a)". At 320 of 198 U.S.App.D.C., at 1053 of 613 F.2d. Judge Greene satisfactorily anticipated this holding by ascertaining that the prior conviction was for a felony, punishable in excess of one year, on a narcotics charge. He also inquired into the length of time that had transpired between the prior conviction and date of trial in this offense. (Tr. 119, 120).

13. The judge inquired of counsel for defendant: "so the only question is in prosecution for narcotics is a prior narcotics conviction, felony conviction, should it be admitted? Has the Court of Appeals dealt with that question under 609(a)?" Counsel responded: "I don't believe our Court of Appeals dealt with that question." (Tr. 120).

The judge hypothesized possible prejudice to defendant: "I guess he would be prejudiced, the jury might say he was convicted once, he probably did it again, that is how he would be prejudiced."

Counsel for defendant: "That is the point, your Honor." (Tr. 122).

14. The Court: "Well, I am going to let it in . . . .. In the absence of a decision from the U.S. Court of Appeals I am prepared to determine that the probative value outweighs the prejudicial effect with the [limiting] instruction being given." (Tr. 123).

Counsel for the defendant was then permitted to argue once again that his client would be prejudiced. The judge concluded to the contrary, however:

"Well, I think unlike your argument, Mr. Garber, [counsel for defendant], I think you [the Government] got a strong case, the police officer struck me as a credible witness, he bought Preludin from the defendant twice, the defendant was caught with the Preludin six inches from him on the bench, if the jury wants to believe that. I certainly would be-

lieve it if I were the trier of fact and it is my opinion that it is a proper subject for impeachment and I will let it in."
(Tr. 125).

15. The record in this case exceeds recent requirements for Rule 609(a)(1) admissibility determinations in this circuit. *Compare United States v. Crawford*, 198 U.S.App.D.C. 312 at 317, 613 F.2d 1045 at 1050 (1979) *with United States v. Jackson*, 201 U.S.App.D.C. 212 at 222, 627 F.2d 1198 at 1208, (D.C.Cir., 1980).

16. The two rules are set forth for comparative purposes:

(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.
F.R.Ev. 609.

*should be admitted if the court determines the probative value outweighs the prejudicial effect."* (Emphasis added). The remark must be read in its context. The judge was distinguishing between the intent Congress expressed in Rule 609(a) and that expressed in 609(b). The court's observation was accurate. The format of Rule 609(a) states that prior convictions *"shall be admitted . . . but only if . . . ."* the felony meets certain conditions, etc. In Rule 609(b) Congress reversed the format and provided that certain prior convictions are *"not admissible . . . unless the court determines . . . [additionally that the "interests of justice" will be served, etc.]."* Thus, Rule 609(b) carves out a specific class of prior convictions, that would otherwise be admissible under Rule 609(a), but are declared to be inadmissible unless additional considerations are met.

■ In view of this inverse treatment of the two classes of prior convictions, it was not incorrect for the judge to comment that the intent to be derived from 609(a), unlike that in 609(b), inferred that in balancing for admissibility, those convictions that were more recent should receive more favorable consideration than those that were over 10 years old. The "Editorial Comment, § 609.-2" on Rule 609(b) expresses much the same thought as the court when it states: "It is believed that courts will very rarely exercise their discretion to admit convictions over 10 years old, and only in exceptional circumstances." Certainly that cannot be said of Rule 609(a).

The court thus correctly commented on a significant difference between two Rules. One stresses admissibility while the other stresses inadmissibility.[17] The judge was recognizing the fundamental rule that "in the system of Evidence, the rules of exclusion are, in their ultimate relation, rules of exception to a general admissibility of all that is rational and probative." J. Wigmore, Evidence, § 10 (1940) (3rd Ed.) 293. (Emphasis added).

■ Finally, the record demonstrates that the actual decision to admit evidence of Lewis' prior conviction was made only after the court determined that the government had shown that the probative value of admitting the evidence exceeded its prejudicial effect. When the trial court explicitly balances probative value and prejudicial effect, his decision will be reviewed only for an abuse of discretion. *United States v. Stewart,* 189 U.S.App.D.C. 195, 196, 581 F.2d 973, 974 (D.C.Cir.1978). We find no abuse here. Quite to the contrary, we find that the judge's decision to admit evidence of the prior conviction was a reasonable response to the conflict in testimony. Where such conflict exists, it is of prime importance that the jury be given as much help in determining credibility as the Rules of Evidence permit. *See United States v. Stewart, supra,* 189 U.S.App.D.C. at 196, 581 F.2d at 974. The fact that the prior felony conviction was for a narcotics offense, and the defendant was again being tried for a similar offense, does not render the prior conviction inadmissible. It may even, as the judge found here, increase its probative value. In such circumstances the court, however, should give a limiting instruction when the conviction is admitted, and in the final charge. Courts should be reluctant to exclude otherwise admissible evidence that would permit an accused to appear before a jury as a person whose character entitles him to complete credence when his criminal record stands as direct testimony to the contrary. *United States v. Simpson,* 144 U.S.App.D.C. 259, 261, 445 F.2d 735, 737 (D.C.Cir.1970).

■ With appellant defending himself by denying knowledge of drug transactions, it is clear that his prior conviction on a plea of guilty to distributing heroin has substantial probative value on the issue of his credibility. It is unfair and misleading to a jury, when credibility is an issue, to refuse to admit relevant evidence that is directly probative on that issue. *United States v.*

---

17. Much the same nuance exists between F.R.Ev. Rule 402, which declares: "All relevant evidence is admissible, except . . . .", and Rule 408, which states: "Although relevant, evidence may be excluded if . . . [etc.]"

*Ortiz,* 553 F.2d 782, 784–85 (2nd Cir. 1977), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977).

█ As Judge Burger (now Chief Justice Burger) wrote in *Gordon v. United States,* 127 U.S.App.D.C. 343, 348, 383 F.2d 936, 941 (D.C.Cir.1967), *cert. denied,* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968), before adoption of the present Federal Rules of Evidence:

> the admission of Appellant's criminal record here, along with the criminal record of the complaining witness, was not in a vindictive or "eye for an eye" sense, as Appellant argues. Rather it was received because the case had narrowed to the credibility of two persons—the accused and his accuser—and in those circumstances there was greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses was to be believed.

While it is true in a narcotics prosecution that a prior narcotics conviction carries more prejudice, it is also true that evidence of such conviction carries more probative value and is more necessary when the accused testified that he is *not* knowledgeable in drug transactions and his testimony on that point directly contradicts that of his accuser.

We accordingly find that in allowing the admission into evidence of Lewis's prior conviction the court applied the proper standard and exercised a proper judicial discretion.

### III. SUFFICIENCY OF THE EVIDENCE

█ Lewis' final contention is that the evidence presented by the Government to prove his guilt of Count Three was insufficient for the trial judge to have permitted it to be considered by the jury. In evaluating such claim we must consider the evidence in the light most favorable to the Government, and sustain the verdict if the evidence is sufficient to permit a reasonable juror to find guilt beyond a reasonable doubt. *Crawford v. United States,* 126 U.S. App.D.C. 156, 158, 375 F.2d 332, 334 (D.C.

Cir.1967). The Government must receive the benefit of all legitimate inferences to be drawn from the evidence, *United States v. Lumpkin,* 145 U.S.App.D.C. 162, 448 F.2d 1085 (D.C.Cir.1971), and need not negate every possible inference of innocence. *United States v. Whetzel,* 191 U.S.App.D.C. 184, 188, 589 F.2d 707, 711 (D.C.Cir.1978).

Nonetheless, appellant's plea deserves our attention, for the facts upon which the Third Count are founded, while conclusive on possession, do not lead inexorably to proof of intent, which is an essential element of the crime. Count Three accused defendant of possession of three phenmetrazine pills *with intent to distribute.* Officer Dodd testified that when he drove up to arrest appellant on the charges later enumerated in the first two counts of the indictment, he observed that appellant was seated on a park bench more than six feet from anyone else, and that six inches from appellant, on the bench, were three pills, under a damp washcloth. Other persons at the scene ran off as the officer approached, but appellant remained seated.

Appellant claims that these facts are insufficient to prove either his possession of or intent to distribute the pills. Citing our decision in *United States v. Staten,* 189 U.S.App.D.C. 100, 106, 581 F.2d 878, 884, appellant notes that "simpl[e] . . . proximity to the drug does not itself enable [a deduction of constructive possession]". Yet in *Staten,* as here, the facts afford an inference of more than mere proximity to the drugs, hence we are guided by broader principles. We stated in *Staten* that "the critical inquiry for judges is whether the factfinder can reasonably conclude from the proof that the accused likely had some appreciable ability to guide the destiny of the drug." Further, "it is enough that [the defendant] 'was knowingly in a position or had the right to exercise dominion and control over' [the drug]." 189 U.S.App.D.C. at 105, 581 F.2d at 883.

In our opinion a reasonable juror could have concluded beyond a reasonable doubt that appellant was in constructive posses-

sion of the pills. Lewis was seated six inches from the pills, and six feet from the nearest person. The phenmetrazine was valuable, raising an inference that it would not have been left behind. *United States v. Weaver*, 148 U.S.App.D.C. 3, 4, 458 F.2d 825, 826 (D.C.Cir.1972). These facts illustrate to us that a juror could reasonably conclude "that the accused likely had some appreciable ability to guide the destiny of the drug." So we agree with the finding of the jury on the element of possession.

Whether a reasonable juror could reasonably conclude that Lewis possessed the pills with the *intent* to distribute them presents a closer question. The small quantity of pills found next to appellant, and the fact that he possessed no large sum of money, affords no inference of distribution.[18] Yet the failure of the factual circumstances of this case to present these traditional indicia of intention to distribute does not diminish the probative value of other evidence present in the case. Where such additional evidence exists, this circuit has not hesitated to uphold a jury's finding of intent to distribute. *See United States v. Thomas*, 179 U.S.App.D.C. 161, 162, 551 F.2d 347, 348 (D.C.Cir.1976); *United States v. James*, 161 U.S.App.D.C. 88, 112, 494 F.2d 1007, 1031 (D.C.Cir.1974), *cert. denied*, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). *Cf. Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970). And involvement in an illegal sale of narcotics may be proved by circumstantial evidence. *United States v. Bentvena*, 357 F.2d 58, 61 (2d Cir. 1966), *cert. denied*, 385 U.S. 815, 87 S.Ct. 33, 17 L.Ed.2d 54 (1966).[19]

Had the pills been found in appellant's pocket, a determination of possession would have been simplified; yet the fact that they were not in his pocket actually presents a stronger case that appellant intended to distribute them. The jury could reasonably have concluded that the pills, on the bench, were in position for sale when the officer approached. As the Government pointed out, appellant had made two previous sales of phenmetrazine in the area. The sale by Lewis of two pills on two prior occasions is circumstantial proof that he intended to sell the three pills that were in his control and constructive possession when he was arrested. We held in the *Watergate Cases* that evidence of other crimes (the break in of Dr. Fielding's office) that is otherwise inadmissible may be offered if probative of motive, and intent is in the same category. *United States v. Haldeman*, 181 U.S.App.D.C. 254, 301–303 and n. 145, 559 F.2d 31, 88–91 and n. 145 (D.C.Cir. 1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Day*, 192 U.S.App.D.C. 252, 266–267, 591 F.2d 861, 875–876 (D.C.Cir.1978); *see Drew v. United States*, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (D.C.Cir.1964); *United States v. Jardan*, 552 F.2d 216, 218 (8th Cir. 1977) *cert. denied*, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977); *Moore v. U. S.*, 150 U.S. 57, 61, 14 S.Ct. 26, 28, 37 L.Ed. 996 (1893); F.R.Ev., Rule 404(b): "Evidence of other crimes . . . may . . . be admissible for . . . proof of *motive*, opportunity, *intent, preparation*, plan, knowledge, identity, or *absence of mistake or accident*." Evidence of the two prior sales of "bam" was thus probative of the fact that charging Lewis with possession with intent to distribute "bam" on this occasion was not a mistake and that the "bam" did not appear a hand's width away by accident. Such evidence could be considered as proof that he was in that business.[20]

---

18. *See, e. g., United States v. Herron*, 185 U.S. App.D.C. 403, 406, 567 F.2d 510, 513 (D.C.Cir. 1977), in which drug-cutting paraphernalia, a large quantity of drugs, and a large quantity of money found in appellant's apartment was acknowledged to be supportive of a finding of an intent to distribute.

19. *See also, Jackson v. United States*, 330 F.2d 679, 681 (8th Cir. 1964), *cert. denied*, 379 U.S.

855, 85 S.Ct. 105, 13 L.Ed.2d 58 (1964) ("Knowledge and intent, because of their nature, must largely be proved by circumstantial evidence").

20. Consideration of appellant's previous sales of phenmetrazine was proper because probative of his *intent to distribute* the pills found beside him at the time of his arrest. The sales would not have been properly considered as

The facts pertinent to the Third Count reveal that appellant was seated on a park bench, several feet from the nearest person yet only six inches from phenmetrazine, in an area in which he had previously sold the same drug. Considering this evidence in the light most favorable to the Government, we conclude that a reasonable juror could have found beyond a reasonable doubt that appellant possessed the drug with the intent to distribute it.

We accordingly affirm the convictions on the First, Second and Third Counts but we have a matter for the district court to correct on remand.

### IV. THE SENTENCE

The court's judgment provides that imprisonment shall be for a period of:

Three (3) years on each of counts # 1, # 2 and # 3 of the indictment, pursuant to the provisions of Title 18, United States Code, Section 4205(b)(2), plus a special parole term of four (4) years.

There is no indication in the written judgment as to whether the sentences on each of the counts are to run consecutively or concurrently. We have checked the sentencing tapes and noted that the judge in imposing sentence did pronounce that "the sentences [were] to run concurrently." The oral sentence constitutes the judgment of the court and is the authority for the execution of the court's sentence. The written commitment is mere evidence of such authority. *United States v. Marquez*, 506 F.2d 620, 621–622 (2d Cir. 1974); *Kennedy v. Reid*, 101 U.S.App.D.C. 400, 403, 249 F.2d 492, 495 (D.C.Cir.1957); *Wilson v. Bell*, 137 F.2d 716, 720 (6th Cir. 1943); *Buie v. King*, 137 F.2d 495, 499 (8th Cir. 1943); *Walden v. Hudspeth*, 115 F.2d 558, 559 (10th Cir. 1941); *Watkins v. Merry*, 106 F.2d 360, 361 (10th Cir. 1939); *Berman v. United States*,

302 U.S. 211, 212, 58 S.Ct. 164, 165, 82 L.Ed. 204 (1937). We accordingly also order that the mandate direct the correction of the clerical mistake in the judgment to conform to the concurrent sentence imposed from the bench.[21]

*Judgment accordingly.*

---

conclusively demonstrating appellant's guilt of Count Three or a general criminal disposition; we found in Part I of this opinion no reason to believe that the jurors improperly cumulated the evidence in this fashion.

Federal Rules of Evidence, Rule 105, states the general rule allowing admissibility of evidence for such a limited purpose.

21. F.R.Crim.P. 36. "Clerical mistakes in judgments . . . arising from . . . omission may be corrected by the court at any time . . . .."