UNITED STATES of America, Plaintiff-Appellee,

v.

Paul C. VILLANO, Defendant-Appellant.

No. 85–2535.

United States Court of Appeals, Tenth Circuit.

Aug. 5, 1986.

Rehearing and Rehearing En Banc Granted Oct. 14, 1986.*

* Opinion withdrawn and judgment vacated, 10th Cir., 803 F.2d 580.

Arthur M. Schwartz, Denver, Colo., for defendant-appellant.

Robert N. Miller, U.S. Atty., Denver, Colo., and A. Mary Sterling, U.S. Dept. of Justice, Kansas City, Mo., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LOGAN and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Defendant, Paul C. Villano, appeals the district court's denial of his motion to correct an alleged clerical mistake in his order of judgment and commitment, which the court issued when Villano pleaded guilty to three federal crimes. This appeal asks what the court's sentence was in the circumstances of this case.

On December 6, 1982, Villano and two codefendants were sentenced by the same federal district judge. All had pleaded guilty to three counts: (1) conspiracy to make extortionate extensions of credit, (2) receipt of a firearm by a felon, and (3) false declaration on an income tax return. According to the court reporter's transcription of the sentencing, Villano received a fine and a prison term on the first count, another fine and prison term on the second count to run consecutively to the term on the first count, and a fine and prison term on the third count to run "consecutively with the sentence on *count one.*" R. II, 28 (emphasis added). The judgment and commitment order, signed the same day, ordered Villano to serve "five years as to Ct. I, three years as to Ct. II, and two years as to Ct. III, to run consecutively." R. I, 19. The district judge's final judgment sheet and the district court docket sheet, containing entries on that same day, are consistent with the judgment and commitment order. R. I, 18; Tab 14 at 3.

In March 1983 Villano moved to reduce his sentence pursuant to Fed.R.Crim.P. 35; the motion was denied. In May 1983 he petitioned to set aside the sentence pursuant to 28 U.S.C. § 2255; that petition was denied in March 1984. This court affirmed this denial. Villano did not bring the alleged clerical error in the commitment order to the court's attention before September 13, 1985, when he filed the instant Rule 36 motion to correct it. The same district judge who imposed the sentence also denied this motion, stating in his order:

"The written judgment and sentence is the only order of commitment. It is executed by the court and it controls. More-

over, it was the court's intent that defendant Villano receive the same sentence as his codefendants and that all three receive an effective term of ten years. The statement of the court appearing in the transcript must be either an error by the reporter or the court mispoke [sic] itself."

R. I, Tab 9 at 1.

The trial court was wrong in its statement that the written controls the oral. A long-established rule in federal courts is that an unambiguous oral pronouncement controls when there is a *conflict* between it and a written order of commitment. *United States v. Pagan*, 785 F.2d 378, 380 (2d Cir.1986); *United States v. Moyles*, 724 F.2d 29, 30–31 (2d Cir.1983); *Schurmann v. United States*, 658 F.2d 389, 391 (5th Cir.1981); *Scott v. United States*, 434 F.2d 11, 20 (5th Cir.1970); *Payne v. Madigan*, 274 F.2d 702, 705 (9th Cir.1960), *aff'd by an equally divided court*, 366 U.S. 761, 81 S.Ct. 1670, 6 L.Ed.2d 853 (1961); *United States v. Bussey*, 543 F.Supp. 981, 984 (E.D.Va.1982). Our circuit has acknowledged this rule. *See United States v. Mason*, 440 F.2d 1293, 1299–1300 (10th Cir.), *cert. denied sub nom. Edwards v. United States*, 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165 (1971); *Baca v. United States*, 383 F.2d 154, 157 (10th Cir.1967), *cert. denied*, 390 U.S. 929, 88 S.Ct. 868, 19 L.Ed.2d 994 (1968); *Watkins v. Merry*, 106 F.2d 360, 361 (10th Cir.1939); *see also Byrd v. United States*, 345 F.2d 481 (10th Cir.1965). "But, where the orally pronounced sentence is *ambiguous*, the judgment and commitment may and should be used to clarify the actual intention of the sentencing judge." *Baca*, 383 F.2d at 157 (emphasis added).[1]

The rule favoring the oral pronouncement when there is a conflict apparently had its origin long before the promulgation of Fed.R.Crim.P. 32(b)(1), which requires a written judgment setting forth the sentence in every case. *See Baca*, 383 F.2d at 157; *Walden v. Hudspeth*, 115 F.2d 558, 559 (10th Cir.1940); *Watkins*, 106 F.2d at 361. Before Rule 32, "the 'judgment' in a criminal case was the sentence pronounced from the bench and not the clerk's entry of judgment or the commitment order.... If the commitment order departed from the terms of the judgment behind it, the order was void." *Baca*, 383 F.2d at 157 (citing *Hill v. United States ex rel. Wampler*, 298 U.S. 460, 465, 56 S.Ct. 760, 762–63, 80 L.Ed. 1283 (1936)). The rationale behind the rule evidently focuses on the necessity for the defendant's presence at sentencing, now covered by the requirement in Fed.R. Crim.P. 43 that the defendant be present at sentencing unless his punishment is to be reduced under Fed.R.Crim.P. 35. *See Rakes v. United States*, 309 F.2d 686, 687 (4th Cir.1962), *cert. denied*, 373 U.S. 939, 83 S.Ct. 1543, 10 L.Ed.2d 694 (1963).

The history of the presence privilege was traced in *United States v. Gregorio*, 497 F.2d 1253 (4th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974). There a defendant challenged his conviction on the ground that he had been excluded from a jury instruction conference. *Id.* at 1256–57. In rejecting his assertions based on the Due Process Clause and Rule 43, the court first recognized the rule as a "restatement" of the common law privilege of presence, *see* Fed.R.Crim.P. 43 advisory committee notes, and then explored the de-

---

1. Several circuits finding oral sentences internally ambiguous or contradictory have declared them illegal under Rule 35(a) and remanded for resentencing. *See, e.g., United States v. Patrick Petroleum Corp.*, 703 F.2d 94, 98 (5th Cir.1982); *United States v. Faust*, 680 F.2d 540, 542 (8th Cir.1982); *United States v. Alverson*, 666 F.2d 341, 347–48 (9th Cir.1982); *United States v. Solomon*, 468 F.2d 848, 850–52 (7th Cir.1972), *cert. denied*, 410 U.S. 986, 93 S.Ct. 1513, 36 L.Ed.2d 182 (1973); *see also United States v. Wingender*, 711 F.2d 869, 870 (9th Cir.1983) (finding judge's reference to state rather than federal sentence creates illegality). Several courts have relied on dicta in *Scarponi v. United States*, 313 F.2d 950, 953 (10th Cir.1963), for the proposition that an ambiguous sentence is illegal. But in *Baca* we did not apply this rule. Rather than begin the sentencing procedure anew, we looked to the commitment order to determine the judge's intent at the original sentencing. *Baca*, 383 F.2d at 157; *accord United States v. Moyles*, 724 F.2d 29, 30–31 (2d Cir.1983).

velopment of that common law. *Gregorio,* 497 F.2d at 1257–59. The earliest reason for requiring the defendant's presence at trial was the English tradition denying counsel to felons. *Id.* at 1257. Without counsel, a defendant had to be present to make his defense. *Id.* After this tradition went by the wayside in the nineteenth century, two other reasons for requiring the defendant's presence evolved. *Id.* at 1258. First, the reliability of the trial should be protected by giving defendants a chance to help with their defense. *Id.* at 1258–59. This reason would include the defendants' right of allocution, i.e., right to speak in their own behalf, at sentencing. *See* Fed. R.Crim.P. 32(a)(1); *Hill v. United States,* 368 U.S. 424, 428–29, 82 S.Ct. 468, 471–72, 7 L.Ed.2d 417 (1962); *Green v. United States,* 365 U.S. 301, 304–05, 81 S.Ct. 653, 655–56, 5 L.Ed.2d 670 (1961); *Byrd,* 345 F.2d at 483–84. Second, defendants should be given an opportunity to observe and understand the trial to "prevent the loss of confidence in courts as instruments of justice which secret trials would engender." *Gregorio,* 497 F.2d at 1258. The *Gregorio* court characterized its analysis of the reasons for Rule 43 as equally applicable to the defendant's due process claim. *Id.* at 1259.

We have recognized as a general matter the importance of the defendant's presence at sentencing, *James v. United States,* 348 F.2d 430, 432 (10th Cir.1965), and resentencing when punishment is increased, *see Mayfield v. United States,* 504 F.2d 888, 889 (10th Cir.1974) (addition of special parole term); *United States v. McCray,* 468 F.2d 446, 450–51 (10th Cir.1972) (removal of time credit). But the defendant's presence is not constitutionally required unless it bears "a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332,

78 L.Ed. 674 (1934) (presence not required at jury's view of crime scene); *see also Peterson v. United States,* 411 F.2d 1074, 1080 (8th Cir.) (presence not required at pretrial conference), *cert. denied,* 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199 (1969). The Fourteenth Amendment does not assure the privilege of presence "when presence would be useless, or the benefit but a shadow." *Snyder,* 291 U.S. at 106–07, 54 S.Ct. at 332. Along the same lines, harmless error analysis has been employed to excuse failure to comply with the literal language of Rule 43. *See Pagan,* 785 F.2d at 380–81 *United States v. Walls,* 577 F.2d 690, 698 (9th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *Peterson,* 411 F.2d at 1080–81.

The precise question in the instant case is whether we may look beyond the literal meaning of the judge's oral pronouncement to discern what sentence the judge actually intended to impose. There is nothing ambiguous about the words spoken by the district court, assuming they were accurately recorded by the court reporter. The oral sentence clearly ordered Villano to serve his sentence on count three consecutively to the sentence on count one; the written sentence clearly made the sentence on count three consecutive to the sentence on count two. There is a direct conflict.

Courts faced with such a conflict have responded in two ways. Some have tried to evade the rule that the oral controls the written by straining to find an ambiguity rather than a conflict.[2] *See, e.g., Pagan,* 785 F.2d at 380. These cases reflect the courts' frustration at the possibility of having to disregard clear evidence of the sentencing court's actual intent. Other courts, once finding a conflict, have, perhaps with equal frustration, mechanistically applied the rule that the oral controls the written

---

**2.** When the judge did not state orally whether sentences were concurrent or consecutive, but the written commitment order stated they were to run consecutively, some courts, including the Tenth Circuit, have characterized the situation as one of ambiguity rather than conflict. Thus, despite the rule that silence means concurrent

sentences, they have permitted the trial court to impose consecutive sentences. *Lundquist v. Taylor,* 347 F.2d 369, 370 (10th Cir.1965); *see also Schurmann v. United States,* 658 F.2d 389, 391 (5th Cir.1981); *Aga v. United States,* 312 F.2d 637, 641 (8th Cir.1963).

without considering whether application of the rule is necessary in each case. *See United States v. Munoz-Dela Rosa*, 495 F.2d 253 (9th Cir.1974); *Bussey*, 543 F.Supp. 981, 984 (E.D.Va.1982). For example, having found a conflict, the *Bussey* court stated:

> "[T]he Court concludes there is little leeway as to the course it must take in this matter. Although the Court here asserts that a sentence substantially more lenient than was intended will result, the Court concludes that it must conform the judgment and commitment order to the sentence imposed from the bench."

*Id.* at 984.

We decline to be tyrannized by the "conflict" or "ambiguity" labels.[3] Neither of the modern purposes behind the presence privilege would be advanced significantly when it is obvious that the conflict between the oral pronouncement and written sentence resulted solely from the judge's misstatement or a transcription error.

Here Villano was given the opportunity to make a statement on his own behalf at sentencing. He brought what he believed to be mitigating factors relevant to his sentencing to the judge's attention. Correcting a misstatement or transcription error in the oral sentence does not frustrate this right. There is nothing that Villano could say to the judge that would have any relevance to the determination that the sentence as orally pronounced was incorrect. *See Gilliam v. United States*, 269 F.2d 770, 773 (D.C.Cir.1959) (presence required only if there is showing of actual controversy as to intended sentence). Although there may be instances in which an error at oral sentencing cannot be corrected outside the defendant's presence, this case is not among them.[4]

The second purpose of the presence privilege is also not implicated in this case. Mere correction of a misstatement or transcription error will neither undermine confidence in the judicial system nor lead the defendant to believe that he has been sentenced in secret. In fact, reducing sentencing to a game in which the judge is bound by the precise words spoken, regardless of his clear intent, would be more likely to undermine confidence in our system. Further, although it is advisable to recall a defendant and explain why a sentence has been changed, it is not always necessary. *See Gilliam*, 269 F.2d at 772–73; *Kennedy v. Reid*, 249 F.2d 492, 496 (D.C.Cir.1957); 3A C. Wright, *Federal Practice and Procedure* § 722, at 16 (1982).

We conclude that neither the Constitution nor the common law requires the defendant's presence *every* time the court takes some action affecting his sentence. Nor does Rule 43 when its purposes will not be served. This is most clear in cases in which oral sentences have been deemed ambiguous. In those cases courts have not hesitated to impose sentences more onerous than those the defendants may have believed they had received originally—without any explicit consideration of the right of allocution or the effect such action might have on confidence in the judiciary. *See, e.g., Baca*, 383 F.2d at 157 (10th Cir.

---

3. Justice Cardozo recognized this danger in his discussion of a defendant's presence privilege: "A fertile source of perversion in constitutional theory is the tyranny of labels. Out of the vague precepts of the Fourteenth Amendment a court frames a rule which is general in form, though it has been wrought under the pressure of particular situations. Forthwith another situation is placed under the rule because it is fitted to the words, though related faintly, if at all, to the reasons that brought the rule into existence."
*Snyder*, 291 U.S. at 114, 54 S.Ct. at 335.

4. For example, in *Mayfield* we rejected a trial judge's attempted addition of a special parole term outside the defendant's presence. *See Mayfield*, 504 F.2d at 889. Although the addition of a special parole term is statutorily demanded, the defendant's presence at resentencing is not useless. *See Caille v. United States*, 487 F.2d 614, 616 (5th Cir.1973). Imposition of a special parole term is not "merely a ministerial act. If the district court had been aware at the time of sentencing that the special parole term must be imposed, it may well be that a shorter prison term would have been awarded." *Id.* at 616. Presumably a defendant must in such a case be afforded a second opportunity to exercise his common law right of allocution.

1967). *But see United States v. Moss*, 614 F.2d 171, 176 (8th Cir.1980) (requiring defendant's presence at resentencing based on ambiguous sentence). It would seem that in cases in which a judge's oral sentence was ambiguous, the allowed imposition of a new sentence comes far closer to an actual resentencing than when a court attempts to choose, based on objective evidence, which of two clear but conflicting sentences was actually intended. We can think of no reason why a defendant's input would be essential in the case of a conflict yet superfluous in the case of an ambiguity. As Justice Cardozo stated:

> "The law, as we have seen, is sedulous in maintaining for a defendant charged with crime whatever forms of procedure are of the essence of an opportunity to defend. Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."

*Snyder*, 291 U.S. at 122, 54 S.Ct. at 338.

■ We find the rule that the oral sentence controls the written inapplicable to the situation presented in this case. We therefore may look beyond the judge's spoken words and attempt to determine which sentence was intended. In making this determination, we will look to the entire transcript of the sentencing proceeding as well as the commitment order and other writings from which we can infer intent. *Cf.*

*Gilliam*, 269 F.2d at 772 (relying on judge's notes, sentencing transcript and docket entry in justifying amendment of written order). To guard against the impression that improper or clandestine factors are responsible for the choice of sentence, there must be clear objective evidence that the written order reflected the judge's actual intent. Absent such evidence we will impose the lesser of the conflicting sentences, based on the principle of lenity in criminal proceedings. *See Gaddis v. United States*, 280 F.2d 334, 336 (6th Cir.1960) (prisoner entitled to have ambiguous language in the pronouncement construed most favorable to him).

■ The question before us was presented to the district court by a motion to correct a "clerical mistake" and was overruled. As noted, the order stated that the written judgment and sentence was the only order of commitment and controls, a conclusion with which we disagree. However, the order did state that it was the court's intent that

> "defendant Villano receive the same sentence as his codefendants and that all three receive an effective term of ten years. The statement of the court appearing in the transcript must be either an error by the reporter or the court misspoke itself. In any event, the order in which the defendant contends a clerical error occurred is the order the court intended."

R. I, Tab 9 at 1. This order has the necessary evidentiary support in the record.

The sentences pronounced on the two other defendants here were reported as being consecutive, each count to the other.[5]

---

5. At sentencing, the district court stated:

"THE COURT: Notwithstanding, then, I think in each case of this nature, the people as well as the defendants have an interest, and it is the Court's responsibility to fairly mete out to both sides a sentence which meets the needs of all. I don't intend to say anything further to any of you other than this.

Mr. Eugene Smaldone, it is the judgment and sentence of the Court that you on the first count be confined to the custody of the Attorney General for a period of five years and fined the sum of $10,000. It is further ad-

judged by the Court that you are committed to the Attorney General, or his authorized representative, for a period of three years. Sentence on count two shall run consecutively with the sentence on count one.

On count three, it is the judgment and sentence of the Court that you be committed to the—the custody of the Attorney General, or his designated representative, for a period of two years. The sentence on count three is to run consecutively with the sentence on count two.

The fines imposed on all three defendants were identical, and the prison terms were identical except for the reported discrepancy in Villano's sentence—that the prison term on count three was to be consecutive to count "one" instead of "two." The words the judge used in sentencing all three were substantially identical; there is no reference to the word "concurrent."

In addition, the docket sheet entry, the district court's final judgment, and the language of the commitment order all corroborate the conclusion that all of the sentences were intended to be consecutive. Although affidavits of attorneys for codefendants were presented to support the court reporter's transcript as an accurate reflection of what the judge said, it is noteworthy that neither Villano nor his counsel pointed out the alleged discrepancy between the oral pronouncement and the order of commitment until nearly three years later. During that period there was constant litigation involving the sentence, including a Rule 35 motion and a § 2255 petition to set aside the sentence. At no time was the discrepancy mentioned until the present motion was filed. If the written order of judgment and commitment contained the error, as contended, and if Villano indeed believed that he had received a concurrent and not a consecutive term on count three, surely it would have been raised earlier in these proceedings.

AFFIRMED.

BALDOCK, Circuit Judge, dissenting:

It is a firmly established and settled principle of criminal law that an oral sentence controls over a judgment and commitment order when the two conflict. This rule is

It is further adjudgment and sentence of the Court that on count two you be fined the sum of $5,000, and on the count three you be find [sic] the sum of $5,000.

It is the further order of the Court that you are to stand committed until the fines imposed are paid or you are otherwise discharged pursuant to law.

The Court will recommend that the place of confinement would be the federal institution in Lexington, Kentucky, and Mr. Smaldone, you are placed on voluntary surrender.

Mr. Paul Villano ...

MR. VILLANO: Yes, sir.

THE COURT: It is the judgment and sentence of the Court that you are committed to the custody of the Attorney General, or his designated representative, on count one for a period of five years, and you are further fined the sum of $10,000.

It is the further judgment and sentence of the Court on count two that you be placed in the custody of the Attorney General, or his authorized representative, for a period of three years and fined a sum of $5,000. The sentence on count two shall run consecutively with the sentence on count one.

It is the further judgment and sentence of the Court on count three that you be placed in the custody of the Attorney General, or his designated representative, for a period of two years and find [sic] the sum of $5,000. The sentence on count three will run consecutively with the sentence on count one.

The defendant is ordered to stand committed until the fines imposed are paid or otherwise the defendant is released according to law.

The Court will recommend that the fed correctional institution at Fort Worth, Texas be the place of confinement. Mr. Villano, you are placed on voluntary surrender.

MR. VILLANO: Yes, sir.

THE COURT: Mr. Clarence Smaldone ...

MR. CLARENCE SMALDONE: Yes, sir, your Honor.

THE COURT: It is the judgment and sentence of the Court that you be committed to the Attorney General, or his designated representative, on count number one for a period of five years and fined a sum of $10,000.

It is the further judgment and sentence of the Court on count two that you be committed to the custody of the Attorney General, or his designated representative, for a period of three years and fined $5,000. The sentence on count two will run consecutively with the sentence on count one.

It is the further judgment and sentence of the Court that on count three that you be sentenced to the custody of the Attorney General for a period of two years and fined the sum of $5m,000. [sic] The sentence on count three will run consecutively with the sentence on count two.

The defendant is ordered to stand committed upon the fines until they are paid or otherwise discharged pursuant to law.

The Court will recommend that the Medical Center for Federal Prisoners at Springfield, Missouri be designated the place for confinement.

Mr. Smaldone you are placed on voluntary surrender."

R. II, 27–29.

recognized in virtually every circuit[1] and has been the law in this circuit since the 1930's.[2] The majority concedes that a conflict is present in this case. Precedent, therefore, would dictate that the sentence pronounced from the bench should be the sentence served by the defendant. This predictable outcome is reversed, however, by the elimination of the rule and the fashioning of a test based on intent. Because I believe the "conflict" rule is correct and proper, I respectfully dissent.

The majority holds that whenever there is a conflict between the oral sentence and the sentence as described in the written judgment, the court must attempt to discern the sentencing judge's intent. Apart from the problems associated with ascertaining intent from the appellate record, the court's ruling affects important principles that underlie the traditional rule. The legal status of the oral sentence and the right to be present at sentencing are diluted by the court's ruling.

The sentence orally pronounced from the bench is the sentence. One of the purposes of the written judgment and commitment order is to provide evidence of the sentence. The majority implies that the promulgation of Fed.R.Crim.P. 32(b)(1)[3] changed the rule that the judgment in a criminal case is the sentence pronounced from the bench. Majority Opinion at 1549 ("Before Rule 32, 'the "judgment" in a criminal case was the sentence pronounced from the bench....'"). While I agree with Judge Murrah's comment in *Baca v. United States*, 383 F.2d 154, 157 (10th Cir.1967), *cert. denied*, 390 U.S. 929, 88 S.Ct. 868, 19 L.Ed.2d 994 (1968), that Rule 32(b) has "enhanced the prestige of the written judgment," I cannot conclude that it has abrogated the rule that the judgment in a criminal case is the sentence pronounced from the bench.

Rule 32(b) became effective in 1946, 327 U.S. at 821 (1946), and is a restatement of Rule I of the Criminal Appeals Rules of 1933, 292 U.S. 661 (1934). Notes of Advisory Committee on Rules. Despite the existence of Rule 32(b), however, the law continues to be that the legally effective sentence is the oral sentence and the judgment and commitment order is mere evidence of the sentence.[4] The Supreme Court has also

---

1. In addition to the second, fifth and ninth circuits identified by the majority, the rule is recognized in the following circuits: *United States v. Gloss*, 720 F.2d 21, 22 n. 2 (8th Cir. 1983); *United States v. McDonald*, 672 F.2d 864, 867 (11th Cir.1982) (per curiam); *United States v. Lewis*, 626 F.2d 940, 953 (D.C.Cir.1980); and *United States v. Morse*, 344 F.2d 27, 29 n. 1 (4th Cir.1965).

2. *Watkins v. Merry*, 106 F.2d 360, 361 (10th Cir.1939).

3. Fed.R.Crim.P. 32(b)(1) provides as follows:

   A judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly. The judgment shall be signed by the judge and entered by the clerk.

4. *United States v. Lewis*, 626 F.2d 940, 953 (D.C. Cir.1980) ("The oral sentence constitutes the judgment of the court and is the authority for the execution of the court's sentence. The written commitment is mere evidence of such authority."); *Borum v. United States*, 409 F.2d 433, 440 (D.C.Cir.1967), *cert. denied*, 395 U.S. 916, 89

S.Ct. 1765, 23 L.Ed.2d 230 (1969) ("It was the pronouncement of sentence ... that constituted the judgment of the court."); *Gilliam v. United States*, 269 F.2d 770, 772–73 (D.C.Cir.1959) ("the order of judgment and commitment is merely evidence of this sentence [the oral sentence]...."); *Kennedy v. Reid*, 249 F.2d 492, 495 (D.C.Cir.1957) ("The pronouncement of sentence constitutes the judgment of the court."); *Rowley v. Welch*, 114 F.2d 499, 501 (D.C.Cir. 1940); *United States v. Marquez*, 506 F.2d 620, 622 (2d Cir.1974) ("the written judgment and commitment being nothing more than mere evidence of the sentence imposed orally by the judge."); *Sasser v. United States*, 352 F.2d 796, 797 (6th Cir.1965), *cert. denied*, 385 U.S. 883, 87 S.Ct. 174, 17 L.Ed.2d 111 (1966) ("the pronouncement of sentence represents the judgment of the court and that the order of judgment is merely evidence of the sentence...."); *Wilson v. Bell*, 137 F.2d 716, 720 (6th Cir.1943) ("the judgment in a criminal case is the pronouncement by the judge from the bench, not the entry of the judgment by the clerk. The actual authority for execution of the judgment is the sentence, and the commitment functions to make the judgment of the court effective."); *United States v. Weir*, 724 F.2d 94, 95 (8th Cir. 1984) (per curiam) ("the oral sentence and not

adhered to the principle that the sentence is the final judgment. *Bateman v. Arizona,* 429 U.S. 1302, 1306, 97 S.Ct. 1, 3, 50 L.Ed.2d 32 (1976). The majority changes the relative status of the oral sentence and the written document by making the two equal. The true function of the written sentence, however, is to help clarify an ambiguous oral sentence by providing evidence of what was stated. The effect of the majority's holding is to permit the evidence of the sentence to replace the sentence when there is a conflict. This is contrary to the purpose of the written sentence and changes the legal status of the oral sentence.

The majority's ruling also endangers the right to be present at sentencing. Fed.R. Crim.P. 43(a) mandates that "[t]he defendant shall be present ... at the imposition of sentence...." Rule 43 has its source in the confrontation clause of the sixth amendment and the due process clause of the fifth and fourteenth amendments. *United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 1484–85, 84 L.Ed.2d 486 (1985). Although it is not an absolute right, *Illinois v. Allen,* 397 U.S. 337, 342, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970), it is fundamental to the entire law of criminal procedure. *Lewis v. United States,* 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892) (dictates of humanity require defendant's presence). A defendant is present only when being sentenced from the bench. Thus, a defendant is sentenced *in absentia* when the written sentence is allowed to control when there is a conflict.

The imposition of a sentence affects the most fundamental rights: life and liberty. Sentencing should be conducted with the judge and convict facing each other and not in secret. It is incumbent upon a sentencing judge to choose his words carefully so that the convict is aware of his sentence when he leaves the courtroom. The rule that the oral sentence controls when there is a conflict is an easy rule to apply and avoids the murky area of determining intent. Because I do not believe this rule should be changed except for the most compelling reasons, which are not present in this case, I dissent.

the written order constitutes the actual judgment of the court...."); *Johnson v. Mabry,* 602 F.2d 167, 170 (8th Cir.1979) ("the oral sentence pronounced by the sentencing judge constitutes the judgment, and anything inconsistent with the judgment which is included in a commitment order is a nullity."); *Buie v. King,* 137 F.2d 495, 499 (8th Cir.1943); *United States v. Munoz Dela Rosa,* 495 F.2d 253, 256 (9th Cir.1974) ("The only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant."); *Spriggs v. United States,* 225 F.2d 865, 868 (9th Cir.1955), *cert. denied,* 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956) ("The journal entry or signed document is not the order of the court. The order of the court is the pronouncement made by the judge in open court."); *Walden v. Hudspeth,* 115 F.2d 558, 559 (10th Cir.1940) ("[t]he judgment is the pronouncement of the court from the bench. The clerk's entry is not the judgment by merely the formal evidence thereof.").